**NATIONAL LABOR RELATIONS BOARD v. NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION.**
No. 4545.

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1940.

Gerhard Van Arkel, Atty., National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Samuel Edes and William F. Guffey, Jr., Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Leon T. Seawell, of Norfolk, Va., for respondent.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

PARKER, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board issued against the Norfolk Shipbuilding and Dry Dock Corporation. Three questions are presented for our consideration: (1) Whether, in view of the character of respondent's business, there was jurisdiction on the part of the Board to enter the order; (2) Whether the findings of the Board with respect to respondent's dominance of and interference with an employees' association, which it ordered disestablished as a bargaining agency, were supported by substantial evidence; and (3) whether the finding as to the discriminatory discharge of one Creecy was so supported.

Little need be said as to the first question. Respondent is chiefly engaged in repairing and overhauling vessels which are used in interstate and foreign commerce, and during the year 1937 it repaired four hundred and forty-four vessels at an aggregate billing price in excess of $1,000,000. Of this amount, sixty-three per cent was for repairs on vessels engaged in interstate commerce and twenty-six per cent was for repairs on vessels owned and operated by foreign shipping interests. In making the repairs, respondent used materials of a value of $250,000, ten per cent of which was purchased from without the state and the remainder had been brought into the state in interstate commerce prior to purchase. A stoppage of the operations of respondent by industrial strife would result, therefore, in substantial interference with the free flow of interstate commerce, both because of interference with purchases of materials and also, and chiefly, because of interference with repairs necessary to the continued operation of vessels used in interstate commerce. Newport News Shipbuilding & Dry Dock Co. v. National Labor Relations Board, 4 Cir., 101 F.2d 841; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

On the second question, it appears that the employees' association was organized through the efforts of one Bozarth, a lumber inspector, whose position with respondent was one of supervisory character although he had supervision of only a few employees. Bozarth was assisted in organizing the association by employees of respondent who were designated for this service by the foremen under whom they worked. Respondent permitted solicitation for membership in the association to be made during working hours, and an assistant foreman was shown to have distributed applications for membership. Meetings of the association were permitted on respondent's property and in a room the key of which was held by Bozarth. Respondent's stationery and mimeographing machine were used by Bozarth without objection. The association was organized shortly after an attempt was made to organize respondent's employees by an outside union; and Bozarth made no secret of the fact that his purpose in organizing it was to forestall organization by the union. Its by-laws, modelled upon those of the employees' association of the Newport News Shipbuilding & Dry Dock Co., provided for agreement by respondent before action by the governing body of the association should "be final and become effective". Respondent recognized the association as a bargaining agency for employees immediately upon its organization without going to the trouble to ascertain whether or not it represented a majority. Notice of an agreement with the association affecting wages and hours of work was immediately posted by respondent, and the association was credited with having secured by negotiation the advantages therein accorded. All of this was in marked contrast with the treatment accorded organizers of an outside union, who were not permitted to solicit members during working hours and were ordered off the premises.

We pass, without deciding, the question as to whether the provision in the by-laws of the association to which we have adverted is not sufficient of itself to show lack of that complete freedom of action on the part of the employees guaranteed them by the National Labor Relations Act, 29 U.S.C.A. §

151 et seq. Cf. National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 60 S.Ct. 203, 84 L. Ed. ——. We think that there can be no question, however, that the other facts and circumstances in evidence, particularly the preferential treatment accorded the organizers of the association as compared with that accorded the organizers of the outside union, furnish substantial basis for the finding of the Board that respondent had interfered with the right of self organization on the part of its employees and had thereby engaged in unfair labor practices within the meaning of sec. 8(2) of the Act, 29 U.S. C.A. § 158(2). National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 262, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599; National Labor Relations Board v. J. Freezer & Son, 4 Cir., 95 F.2d 840; National Labor Relations Board v. Wallace Mfg. Co., 4 Cir., 95 F.2d 818.

■ On the third question, we do not think that the finding of the Board as to the discriminatory discharge of Creecy is sustained by substantial evidence. There is no direct evidence whatever that his discharge was on account of union membership and we can find no evidence of circumstances from which such conclusion can legitimately be drawn. On the contrary, the evidence is that Creecy was a dock hand, that the force in which he was working was ordered reduced because the number of ships docked had decreased and that he was laid off because he was junior in point of service to the other dock hands. The Board finds that there was increase in respondent's general business and deduces from this the conclusion that the reason given for the laying off of Creecy was not genuine. It appears, however, that the number of ships docked had in fact decreased; and this might certainly be ground for reducing the number of dock hands, whatever the state of the general business of respondent. The fact that Creecy was a member of an outside union may furnish ground for suspicion that his discharge was on that account; but on the other hand it does not appear that the company discharged any other union members, or that Creecy was an officer or organizer of the union or important in any way in its organization, or that his discharge had any importance in combatting union organization. The Board adverts to the fact that Creecy was not as helpful as he might have been in securing members for the association and that Bozarth dropped him as

an organizer on that account, but this furnishes no basis for a finding that respondent discharged him from its employment on account of union membership. The record shows that Creecy was not only a member of the employees' association but also a member of its executive committee, that he was promised employment as soon as conditions warranted it, and that respondent's general manager, upon his request, agreed to recommend him for employment elsewhere. Efforts to show statements by an assistant foreman that he was discharged because of union activities failed entirely.

Findings of the Board must have substantial support in the evidence, i. e., they must be based upon facts in evidence from which the fact in issue can reasonably be inferred. As we said in Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 93 F.2d 985, 989: "We are bound by the Board's findings of fact as to matters within its jurisdiction, where the findings are supported by substantial evidence; but we are not bound by findings which are not so supported. 29 U.S.C.A. § 160(e) (f); Washington, Virginia & Maryland Coach Co. v. National Labor Relations Board, 301 U.S. 142, 57 S.Ct. 648, 650, 81 L.Ed. 965. The rule as to substantiality is not different, we think, from that to be applied in reviewing the refusal to direct a verdict at law, where the lack of substantial evidence is the test of the right to a directed verdict. In either case, substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences."

This we understand to be the rule laid down by the Supreme Court in the later case of Consolidated Edison Co. et al. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126, where the court said: "We agree that the statute, in providing that 'the findings of the Board as to the facts if supported by evidence, shall be conclusive', * * * means supported by substantial evidence. Washington, V. & M. Coach Co. v. National Labor Relations Board, 301 U.S. 142, 147, 57 S.Ct. 648, 650, 81 L.Ed. 965. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

For the reasons stated, the order of the Board will be modified by eliminating therefrom paragraphs (b) and (c) of section 2, which relate to the reinstatement of Creecy with back pay; and, as thus modified, the order of the Board will be enforced.

Modified and enforced.