**ROGERS v. GLAZER et al.**

No. 384.

District Court, W. D. Missouri, W. D.

April 16, 1940.

Chet Keyes, of Kansas City, Mo., for plaintiff.

Rosenberg & Brenner, of Kansas City, Mo., for defendants.

OTIS, District Judge.

I wish it were possible for me to take enough time to write a full, carefully formulated opinion in this case, because it is a case which presents a new problem, at least it presents a new problem to this court. It is even possible that the problem which it presents has not heretofore been presented to any court. I would take more time than I have taken if I did not believe that I could decide the case now. I have given careful consideration to the very thorough brief which Mr. Keyes presented to me at the beginning of the trial, prepared with his usual thoroughness and scholarship, and I have listened carefully

to the argument of counsel. I shall decide the case now.

The amount involved is sufficiently great and the importance of the problems presented sufficiently great, the record is sufficiently short, that I have no doubt if the party against whom my decision goes upon reflection is thoroughly convinced of the justice of his position, he will appeal the case to a higher and wiser court.

First of all I want to say just a word upon a matter which has not been argued, although it was referred to by Mr. Keyes in his opening statement and is referred to by him in his brief. I think that the general view is that a United States District Court has jurisdiction of a case of this character even although the amount involved is less than $3,000. The reason for that general view is that there is an exception stated in Section 41 of Title 28, an exception which says that the United States District Court shall have jurisdiction of any case, regardless of the amount involved, if it arises under some act of Congress regulating commerce. Undoubtedly this case arises under an act of Congress regulating commerce but this act, The Wages and Hours Act, or the Hours and Wages Act, 29 U.S.C.A. § 201 et seq., was passed subsequent to the passage of Section 41 of Title 28 and it expressly provides that any suit of this character may be brought in "any court of competent jurisdiction." In the very next paragraph to that paragraph in which the language I have stated in substance appears, reference is made to certain matters of which "any United States Court" shall have jurisdiction. I think it is very debatable if it was not intended by Congress that if the amount involved was less than $3,000 any state court might have jurisdiction to enforce the rights of an employee. Congress certainly did not intend to handicap employees by giving exclusive jurisdiction—and that is the effect of saying that this court has jurisdiction—of giving exclusive jurisdiction to the federal courts. An employee might desire to sue for $50 or $100. Certainly it was not the intention of Congress that he should have to leave his place of residence in some county far removed from the seat of a federal court and go to that federal court to prosecute his $50 suit and I do not believe that Congress intended to burden the federal court with $50 suits. I think it is certainly a thesis that can be maintained with some force, that when Congress said "Any court of competent jurisdiction" it meant *any* court of competent jurisdiction. But, I pass that matter because counsel here seem to be agreed that this court has jurisdiction and because I am rather inclined to think that the weight of the argument is in favor of that contention.

There is a second matter to which I make brief reference before I proceed to consider the merits of the case. Originally in their answer the defendants attacked the validity, the constitutionality of this Act, The Fair Labor Standards Act—I think that is the official title. The Attorney General accordingly was notified, as the statute now requires, and he acknowledged the notice, and then the defendants, for some reason which was certainly satisfactory to themselves, withdrew their contention that the act upon which the plaintiff bottoms his case is unconstitutional. I pass that matter, therefore. Usually one does not consider whether an act is constitutional, that is a court does not usually consider it, if the parties do not maintain that it is, although if it were a very clear case I think it would be the duty of the court to consider that question, because of the oath of office which the judge takes.

There is no doubt at all that ten years ago this act would have been held unconstitutional by the unanimous vote, I suppose, of the judges of the Supreme Court. There is very little doubt that it now would be held constitutional by the Supreme Court; perhaps not by the unanimous vote, because I think Mr. Justice McReynolds is still with us. But, we shall pass the matter. We shall only say that certainly the act should be construed in such a manner as that its constitutional validity shall be least subject to question.

The general picture which is presented by the evidence in this case is an interesting picture. Here is a little business maintained by the defendants. They have five employees sometimes, sometimes four; the partners themselves engage in the actual labor involved in the business. They buy old automobiles which have been wrecked or burned and they dismantle them and they sell the parts which are useful still to those desiring to purchase them. That is the general character of the business.

The plaintiff—he impressed me very favorably as an intelligent man and as a good man—he was unfortunate, as every

man sometimes is—he was out of employment. He had nothing or little to eat and he was not certain that he had a place to sleep. The defendants, or one of them, knew him, met him on the street, picked him up, I think it is fair to say, took pity upon his misfortune, and gave him employment, which he very gladly accepted; gave him a place to sleep and eat and live and paid him wages agreed by an oral contract between them, which must have been acceptable to the plaintiff, because he accepted the employment. It is not such a picture as we often have in a great city, picture of a factory with thousands of employees who are helpless. It is a very much simpler picture.

Now, this plaintiff for some reason, his employment having been discontinued, sues the employer, who took him into his place and gave him a job, for nearly $2,000. He has the right to do that if this law applies to him. The real question is whether the law does apply to him. That question has two branches I think, two principal branches. The first is whether the law applies to plaintiff, even if the exceptions are not considered; the second is whether plaintiff's case falls within one of the exceptions.

The law says, the Fair Labor Standards Act § 6, 29 U.S.C.A. § 206, says, "that every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates * * *." So the question is, was the plaintiff an employee who was engaged in commerce or in the production of goods for commerce. Well, I think that we can say at once, that I believe is the position which Mr. Keyes took in his argument and his opening statement—I think we can say at once that the plaintiff was not engaged in commerce. Mr. Keyes used an illustration which seemed to me to be very convincing. One engaged in commerce, he said, is such a man as one employed by an interstate railroad or a telephone company or telegraph company.

Our question then comes down to this question: Was the plaintiff an employee who was engaged in the production of goods for commerce? Well, now, he certainly was not engaged in the production of goods in the literal sense of the word production. Nobody has contended he was. He was a watchman. It was his business to protect from depredations by thieves this business enterprise and the property of the defendants on the site of the place of business. I think it can be truly said from the evidence that the only property that had any real value, which needed any protection from thieves, was the parts which the defendants were engaged in selling. The scrap that remained when the parts were removed from automobiles which had been bought, in the first place was of comparatively small value and, in the second place, it was extremely difficult for thieves to carry it away.

We could get some idea of the relative value of this scrap and other materials by considering the evidence that I think throws most light upon it. As I recall it, the testimony was that the minimum price paid for an automobile was about $55, the maximum price about $150. The testimony was there were about 300 pounds of residue scrap left in an automobile, that is my recollection, and that it sold for a maximum, I think it was said by some of the witnesses, of $7 a ton and that it cost about $4.50 a ton to put it in salable shape. So, in the automobile that cost $55 or $150 there was in that automobile about $1's worth of scrap.

I say that if we were to consider the word "production" in its literal meaning there would be no doubt at all that the plaintiff was not engaged in the production of goods for commerce. But, we must consider the definition which the statute incorporates (and it was undoubtedly intended to be as broad as reasonably it could be made because this statute was enacted like many kindred statutes for the benefit of working men). It defines what is meant by production and engaged in production: "An employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting"—this plaintiff was not doing any of those things, "or in any other manner working on such goods", and this plaintiff was not doing that, he was not working on any goods, "or in any process or occupation necessary to the production thereof." Fair Labor Standards Act § 3(j), 29 U.S.C.A. § 203(j). I suppose it is upon that last phrase that plaintiff relies. Well, one can be very brief about a statement of a reason in this connection. There is not much room for amplification.

I do not think that it can be said that a watchman for such an establishment as

the defendants maintain, a part of whose duty it may be said—a very small part of whose duty was to watch the pile of scrap iron on the premises, I do not think that it can be said that he is engaged in an occupation *necessary* to the production of goods. Perhaps I may be giving too literal an interpretation to the word "necessary." Certainly it is not *necessary* to the production of goods that there should be a watchman at all. In many yards scrap is assembled and sold without any watchman and I do not think that it can be said that a watchman *produces* goods. He may do that which is helpful to the business, he may help to produce the profits that arise from the business. He does not produce the goods. I do not think I could make my position clearer on that if I were to talk an hour about it.

But this statute contains certain exemptions. One of the exemptions is, it does not apply, expressly does not apply— Section 13(a) (2), 29 U.S.C.A. § 213(a) (2)—it does not extend its privileges to an employee engaged in any retail establishments, the greater part of whose selling is intrastate. This business was certainly a retail business, almost exclusively the business of this enterprise was the sale at retail of automobile parts. There is no controversy about that. Why then does not this exception apply to this plaintiff?

Well, Mr. Keyes, who overlooks nothing, who presents his views with great clearness and plausibility, says that really there were two businesses out here, one of them was a retail business, but there was also a wholesale business, and this plaintiff was engaged in both of them. It seems to me that the act ought to be construed reasonably and that it cannot be construed so as to justify us in saying that what was a mere incident, a mere trifling side issue, something that was resorted to by the defendants because they could not throw their junk on some junk pile—I say it seems impossible to me that a reasonable construction of the evidence would justify us in saying that this purely incidental matter, this very minor matter, was a separate business. It was not a separate business. The truth is that this plaintiff was employed, was engaged in a retail business. Because he was so engaged he is not entitled to the extraordinary privileges which this act confers upon employees who do come within its terms.

I find the facts to be:

I. The defendants were and are engaged primarily in the business of selling at retail in Missouri used parts from automobiles. Their source of supply of used parts is wrecked and burned automobiles which they purchase. Most of the automobiles they purchase have been wrecked or burned in Missouri. Defendants take the used parts from these automobiles and sell them at retail. Their establishment is a retail establishment.

II. When all salable parts have been taken from a wrecked or burned automobile the residue is scrap. This scrap is cut by defendant so that it can be more compactly stored and will command a better price. Periodically, the accumulated scrap is sold to dealers in scrap and the defendants know that some of it and the products manufactured from it will pass into the stream of interstate commerce. The disposition of this scrap is a mere incident of defendants' business. Its primary purpose is to rid defendants' yard of accumulations of debris and not to earn a profit.

III. The plaintiff was employed by defendants as a watchman for the protection from thieves of defendants' property, primarily for the protection of the parts which defendants had for sale and only incidentally, if at all, for the protection of the scrap iron residue.

IV. Plaintiff was not engaged in commerce between the states when he was serving defendants as a watchman nor was he employed by defendants in producing, manufacturing, mining, handling, transporting or in any other manner working on goods for commerce now in any process or occupation necessary to the production of such goods.

### Conclusion of Law

I conclude as a matter of law that the plaintiff is not entitled to the privileges conferred by the Fair Labor Standards Act upon certain employees and that he is not entitled to recover anything from the defendants in this case.

### Judgment

It is the judgment of the court that plaintiff do not recover from the defendants and that the costs shall be assessed against the plaintiff.

An exception is noted to the conclusion of law stated by the court and to the judgment.