**NATIONAL LABOR RELATIONS BOARD**
**v. HENRY LEVAUR, Inc., et al.**

No. 3579.

Circuit Court of Appeals, First Circuit.

Oct. 25, 1940.

Writ of Certiorari Denied Jan. 20, 1941.

See 61 S.Ct. 550, 85 L.Ed. ——.

Alvin J. Rockwell, of Washington, D. C. (Charles Fahy, Robert B. Watts, Laurence A. Knapp, Mortimer B. Wolf, and Lewis M. Gill, all of Washington, D. C., on the brief), for the Board.

Allan Seserman, of Boston, Mass., for respondents.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

These consolidated cases are before this court upon petition of the National Labor Relations Board for the enforcement of an order issued against respondents pursuant to Section 10(c) [1] of the National Labor Relations Act, 49 Stat. 453 (1935), 29 U.S. C. § 160(c) (Supp.1938), 29 U.S.C.A. § 160 (c). The jurisdiction of this court is derived from Section 10(e) [2] of the same statute.

Each of the three respondents is a Rhode Island corporation engaged in the distribution, servicing, and repair of motor vehicles in Providence, Rhode Island, where the alleged unfair labor practices were found to have occurred. Charges were filed against each respondent by the International Association of Machinists, Local No. 1017, and the Board issued complaints charging the respondents with identical unfair labor practices. The three proceedings were thereafter consolidated, and the respondents filed answers denying the jurisdiction of the Board on the ground that they were not engaged in interstate commerce, and denying the commission of the unfair labor practices alleged.

At the hearing before the trial examiner, all the parties entered into stipulations consenting to the entry of an order by the Board, and a petition to the Circuit Court of Appeals for its enforcement, requiring the respondents to cease and desist from the unfair labor practices charged and ordering certain affirmative action subject only to respondents' right to contest the jurisdiction of the Board. [3]

After hearing and argument, the Board issued findings of fact and conclusions of law and held that the respondents' operations constituted a continuous flow of commerce, and, therefore, were subject to the National Labor Relations Act. The Board entered the order agreed upon and has petitioned this court for enforcement. Thus, the only question before us is whether the respondents are engaged in interstate commerce or whether their unfair labor practices so "affect commerce" within the meaning of Section 10(a) [4] of the National Labor Relations Act, supra, as defined in Sec-

---

[1] "(c) Reduction of testimony to writing; findings and orders of Board. * * * If upon all the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this chapter. * * *"

[2] "(e) Petition to court for enforcement of order; proceedings; review of judgment. The Board shall have power

to petition any circuit court of appeals of the United States * * * for the enforcement of such order * * *. Upon such filing, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, * * *."

[3] Such stipulations have been several times upheld. See, e. g., National Labor Relations Board v. Gerling Furniture Mfg. Co., 7 Cir., 1939, 103 F.2d 663; National Labor Relations Board v. Pure Oil Co., 5 Cir., 1939, 103 F.2d 497.

[4] "(a) Powers of Board generally. The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158) affecting commerce. This

tion 2(7) [5] of the statute, 29 U.S.C.A. § 152 (7).

Amply supported by uncontradicted evidence, the Board found that all three respondents are engaged in the sale, distribution, exchange, service and repair of new and used automobiles, and parts thereof. The general operations of the respondents as distributors or dealers was described as follows:

Each respondent has an agreement with a manufacturer of automobiles for the sale and distribution of the latter's automobiles within a certain sales area. These areas are not necessarily confined to any particular state. Distributors, such as the respondents, appoint dealers to represent them within their designated sales areas. Respondent Bradburn Motors Company is a distributor and dealer in automobiles, parts, accessories and equipment manufactured by the Pontiac Motor Division of the General Motors Sales Corporation, and is represented by ten Rhode Island dealers and one Massachusetts dealer. Colt-Brady Company is a distributor of and dealer in automobiles, parts, accessories and equipment manufactured by the Chrysler Corporation of Detroit, Michigan, and has seventeen Rhode Island and three Connecticut dealers. Henry Levaur, Inc. is a distributor of and dealer in automobiles, parts, accessories and equipment manufactured by the Chrysler Corporation of Detroit, Michigan, for its Desoto Division, and has thirteen dealers in Rhode Island and three in Massachusetts.

The dealers purchase from the distributors the products of the manufacturer for resale, and furnish reports of their operations to the distributors who in turn report to the manufacturers. The automobiles which are ordered from the manufacturers by the distributors for themselves and their associated dealers are shipped directly to the respondents. Title to the automobiles remains in the manufacturers until the respondents take delivery in Providence. The automobiles which are delivered by the manufacturers to the respondents are transported by railroad or truck from the factories in Michigan to Providence. From the railroad station in Providence the automobiles are driven to the respondents' places of business by their employees. There, the automobiles are serviced by respondents' employees and made ready for delivery to individual purchasers or dealers. The sales prices of new cars established by the respondents, or their dealers, are based upon the manufacturers' list prices, and to further the sale of automobiles the manufacturers advertise in local newspapers and list the names of the respondents and their dealers. Both the manufacturers and distributors also take an active part through sales conferences in promoting the business of their dealers. The dealers buy their cars from the distributors and take delivery in Providence.

The pecuniary value of the business done by each respondent was considerable, ranging approximately from $700,000 to $1,500,000. During the period between January 1, 1938 and June 1, 1939, the respondent, Henry Levaur, Inc., purchased new cars of the value of $1,169,000. 100 per cent of these were shipped to him in interstate commerce. During the same period he exchanged with other dealers new cars, 60 per cent of which were received from dealers outside of the State of Rhode Island. 4 per cent of the used cars acquired by the respondent during the same period were received from points outside of the State, and 100 per cent of the parts and accessories were shipped from points beyond Rhode Island. 10 per cent of the new cars which the respondent sold was sold to persons or dealers outside of Rhode Island as was 60 per cent of the new cars exchanged with other dealers. 2½ per cent of the used cars sold by the respondent were sold to persons or dealers outside of the state.

A similar picture is presented by the business of the respondent Bradburn Motors Co., as the evidence showed that 97 per cent of the new cars purchased, 100 per cent of the new cars received in exchange, 100 per cent of the parts and accessories purchased, and 3 per cent of the used cars acquired, came from outside the state while 10 per cent of the new cars sold, 60 per cent of the new cars exchanged, and 2½ per cent of the used cars sold went to purchasers or dealers having residences or places of business in the states adjacent to Rhode Island.

---

power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise."

[5] "(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

The respondent, Colt-Brady Co., received 100 per cent of its new cars purchased, 100 per cent of its new cars received in exchange, and all its parts and accessories purchased from points without the state; and sold 5 per cent of its new cars to purchasers or dealers in states other than Rhode Island. 100 per cent of the new cars which it exchanged with other distributors, 5 per cent of its used cars sold, and 1 per cent of its parts and accessories went to out of state purchasers.

The respondents contend that they are not engaged in interstate commerce or do not so affect such commerce as to bring them under the National Labor Relations Act. To support this contention they present several arguments. They insist that their business is predominantly an intrastate retail business, that their interstate transactions are very small percentages of their total business, that they do not take title to the automobiles shipped in interstate commerce until they arrive within Rhode Island, and that they relinquish title to the purchaser before the car leaves the State. This, they claim, makes even their transactions with out of state vendors and purchasers completely intrastate sales and removed from the regulatory power of Congress.

We cannot agree with the respondents. It seems clear that they are engaged in interstate commerce and that any stoppage of their businesses because of their unfair labor practices would obstruct or burden the free flow of such commerce. The decided cases have rejected all of the respondents' contentions.

■■ It has long been settled that activities which when separately considered are intrastate may become subject to the power of Congress when they have a close and substantial relation to interstate commerce. Consolidated Edison Co. v. National Labor Relations Board, 1938, 305 U.S. 197, 59 S. Ct. 206, 83 L.Ed. 126; Santa Cruz Co. v. National Labor Relations Board, 1938, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Cowell Portland Cement Co., 9 Cir., 1939, 108 F.2d 198. The respondents clearly fall within this conception for not only do they receive all of their new inventory from out of the state but they make sales, not only to casual out of state purchasers, but to appointed dealers in states other than Rhode Island. These dealers are within the designated sales area of the respondents, are bound by contract to do business with the manufacturer through the respondents, and are in many ways tied to them. The contention that an interference with the business of any one of the respondents would not affect interstate commerce is plainly untenable. A labor dispute which would curtail the sales of respondents would cut down the percentage sold to out of state purchasers or dealers, would prevent the free exchange of new cars, and would affect the receipt of automobiles from the manufacturer. Clearly such curtailment affects interstate commerce.

We do not rely on the fact that 100 per cent of respondents' purchases of new cars are shipped to respondents from without the state, though there is considerable authority that that fact alone would be sufficient to subject respondents to the National Labor Relations Act. Newport News Shipbuilding & Dry Dock Co. v. National Labor Relations Board, 4 Cir., 1939, 101 F. 2d 841, reversed on other grounds, 1939, 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219; National Labor Relations Board v. Norfolk Shipbuilding & Dry Dock Corp., 4 Cir., 1940, 109 F.2d 128; National Labor Relations Board v. A. S. Abell Co., 4 Cir., 1938, 97 F.2d 951; cf. Santa Cruz Co. v. National Labor Relations Board, supra.

■ Laying aside any consideration of the source of the automobiles sold by the respondents, they are still deliberately engaged in interstate transactions with associated dealers. Santa Cruz Co. v. National Labor Relations Board, supra; cf. Consolidated Edison Co. v. National Labor Relations Board, supra. Respondents are integral parts in the distribution of automobiles in interstate commerce and maintain contractual connections with out of state dealers to further interstate sales. Cf. Carter Carburetor Corp. v. Federal Trade Commission, 8 Cir., 1940, 112 F.2d 722. No "flow" of interstate commerce is necessary to subject an enterprise to the National Labor Relations Act since burdens on such commerce can result from intrastate acts irrespective of the origin of the materials or the place where the sale is made. Clover Fork Coal Co. v. National Labor Relations Board, 6 Cir., 1938, 97 F.2d 331.

■ It is not in the least significant that the sales are so made that title passes

to the purchaser within Rhode Island. It has long been held that a sale involving interstate transportation is not removed from Congressional regulation because the sale itself is intrastate, either before or after the transportation. Currin v. Wallace, 1939, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Lemke v. Farmers' Grain Co., 1922, 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Dahnke-Walker Co. v. Bondurant, 1921, 257 U.S. 282, 42 S. Ct. 106, 66 L.Ed. 239. This reasoning has been explicitly applied to jurisdiction under the National Labor Relations Act, the Supreme Court saying "And the place where the manufacturer makes his sales is not controlling if the sales in fact are in interstate commerce". Santa Cruz Co. v. National Labor Relations Board, supra, 303 U. S. at page 465, 58 S.Ct. at page 659, 82 L. Ed. 954. See, also, National Labor Relations Board v. Fainblatt, 1939, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Jones & Laughlin Steel Corp., supra; National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 1940, 110 F.2d 780; cf. Carter Carburetor Corp. v. Federal Trade Commission, supra.

■ The fact that the interstate transactions of the respondents are only a small percentage of the entire business of respondents is not material since the test of applicability of the National Labor Relations Act is not the percentage of business done but the effect on interstate commerce. Santa Cruz Co. v. National Labor Relations Board, supra; National Labor Relations Board v. Fainblatt, supra; Consumers Power Co. v. National Labor Relations Board, 6 Cir., 1940, 113 F.2d 38; Southern Colorado Power Co. v. National Labor Relations Board, 10 Cir., 1940, 111 F.2d 539.

■■ Finally, respondents contend that the strike called by their employees in 1939 and quickly abandoned actually did not interfere with interstate commerce, and that even if a strike were successful the interstate business could be otherwise handled so as to prevent its disruption. Such contentions have no merit and have previously been denied. National Labor Relations Board v. Bradford Dyeing Association, 1940, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L. Ed. 1226; Southern Colorado Power Co. v. National Labor Relations Board, supra; North Whittier Heights Citrus Ass'n v. National Labor Relations Board, 9 Cir., 1940, 109 F.2d 76, 81, 82; cf. Virginian Ry. v. System Federation No. 40, 1937, 300 U.S. 515, 557, 57 S.Ct. 592, 81 L.Ed. 789; McCall v. California, 1890, 136 U.S. 104, 111, 10 S. Ct. 881, 34 L.Ed. 391. Since the purpose of the Act is to protect interstate commerce from disruption, Congress can act before the disruption occurs to prevent unfair labor practices if they would tend to lead to labor disputes which threaten to obstruct interstate commerce. National Labor Relations Board v. Bradford Dyeing Association, supra; Consolidated Edison Co. v. National Labor Relations Board, supra; Clover Fork Coal Co. v. National Labor Relations Board, supra. If the Board can act before any disruption occurs, it would indeed be a strange situation if an employer could obtain immunity from the jurisdiction of the Board by provoking a labor dispute and securing its settlement before it affected the interstate commerce involved. Thus, the respondents' contention that the failure of the strike to affect interstate commerce prevents attachment of the Board's jurisdiction must be rejected.

Respondents, disregarding their interstate purchases, are engaged in the interstate sale of automobiles both to individual customers and to contractually associated dealers in states other than Rhode Island. We hold that their unfair labor practices might lead or tend to lead to labor disputes which threaten to obstruct such interstate transactions. In such circumstances the respondents are clearly subject to the jurisdiction of the National Labor Relations Board which properly entered the order agreed upon by the parties in their stipulations. The Board's petition for enforcement is, therefore, granted, and a decree will be entered enforcing the order of the Board.