## MULDOWNEY v. SEABERG ELEVATOR CO., Inc.

### No. 1701.

District Court, E. D. New York.

June 4, 1941.

See, also, D.C., 1 F.R.D. 605.

August Zolotorofe, of Brooklyn, N.Y., for plaintiff.

William Walzer, of New York City, (Raymond Gitlin, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

On stipulation by and between the attorneys for the respective parties this case was tried before the Court without a jury.

This is an action brought by the plaintiff under the "Fair Labor Standards Act of 1938". Act of June 25th, 1938, c. 676, §§ 1–19, 52 Stat. 1060–1069, title 29, §§ 201–219, U.S.C.A.

The defendant is a domestic corporation having its principal and sole place of business in the Borough of Brooklyn, City and State of New York.

During the entire period involved herein the defendant was engaged in the business of manufacturing and installing new elevators, manufacturing parts, servicing and maintaining elevators and repairing elevators and dumb-waiters.

During the period here in question all of the elevators manufactured and installed by the defendant were without exception manufactured by it at its plant in the City and State of New York, and all were sold by it in the City and State of New York to property owners having buildings in the City and State of New York, and each of such elevators was installed and permanently affixed to the land and buildings in the State of New York belonging to such purchasers who since such installations, continued to use and operate such elevators within the City and State of New York.

The total business represented by such new installations for the period here in question was $335,469.

During the period here in question the defendant maintained a separate division or department at its plant, which was devoted to maintenance, service and repair work.

The maintenance, service and repair department was separate and distinct from the manufacturing and installation department in that it had a separate staff of workmen operating under a wage scale different from that of the installation department, with a separate foreman, separate superintendent and separate storage space for its maintenance and repair parts.

The maintenance, service and repair department performed its work under annual written contracts with builders calling for complete service, maintenance and repair of elevators, including inspection, replacement and repair of all of its parts. That department also rendered inspection, adjustment and repair service upon elevators to persons not under service and maintenance contracts, with the defendant, and who requested or required such inspection, adjustment and repairs.

During the period here in question, the total business done by the service, maintenance and repair department under regular maintenance contracts aforementioned affected 201 buildings covered by 201 contracts and involving approximately 318 elevators. Each and every building and elevator covered by such maintenance contracts was without exception situated in the City and State of New York. The total amount of the service and maintenance business under such contracts, during the period in question was $99,937.50.

The service, maintenance and repair department rendered services such as adjustment and repairs on elevators upon orders and arrangements other than the maintenance contracts aforesaid. During the period here in question, this department rendered such adjustment and repair service upon elevators within the City and State of New York in the sum of $46,655.

During the period in question the service, maintenance and repair department of defendant was called upon to make repairs upon elevators situated outside of the State of New York. These repairs were in the total sum of $1,012 not counting pennies.

The repairs done outside of the State of New York are made up of the following: labor and services $226; material originating at defendant's plant $172; material not originating at defendant's plant $122 and mark-up or profit $492.

The total of all business done by the defendant covering all of its departments

for the period in question amounted to $484,290.70.

The out of State repairs amounting to $1,012 represents 3/8 of 1% of the total business done by the maintenance, service and repair department.

The defendant's elevators were manufactured and assembled by it from various materials and parts such as metals, castings, rails, cables, motors, controllers, structural steel, lumber, electrical material, paints, varnish, brass, bronze, bearings, springs and elevator doors.

The total purchases made by the defendant of all types of materials going into its manufactured product for use on new elevators, and in the maintenance and repair department for the period in question amounted to $254,563.34.

$54,573.75 that is 21.5% of the total sum expended for purchases represents purchases made of materials from companies outside of the State of New York.

Defendant, in or about January, 1939, entered into possession under a contract to purchase, and subsequently acquired title to the premises #243, 44th Street, Brooklyn, New York, which on obtaining possession it immediately proceeded to clean and repair, making it suitable for the removal to it of defendant's business.

Plaintiff was hired about January 30th, 1939, by the defendant to help clean such newly acquired premises and to sleep therein pending alterations.

The alterations of such premises continued from January 30th, 1939, to about April 15th, 1939, when the carpentry department in defendant's plant commenced work therein.

Between January 30th, 1939, and about April 15th, 1939, no manufacturing, repairs, or other of defendant's business was done at or through, the buildings #243, 44th Street, Brooklyn, New York.

The plaintiff, during that period performed services such as cleaning, and removing debris; assisting painters who were not members of defendant's regular staff, but who were hired especially for the purpose of making the alterations, and plaintiff, during that period at request of defendant slept in the premises.

Commencing about April 15th, 1939, defendant's plant was moved over to the buildings at #243, 44th Street, Brooklyn, New York, where from about such date it

proceeded to do its regular and usual business.

The plaintiff, after the removal of the defendant's plant, was taken on as a regular employee of the defendant, and assigned to perform the duties of a porter, and was required to sleep at the premises. As a porter he was obliged to and did sweep and clean the plant, the offices, the sidewalks, open and close windows and doors, run errands, prepare coffee, wash the coffee cups and saucers, and do minor chores at the homes of some of the officers of defendant; he also assisted in the removal of light materials from defendant's truck, occasionally painted iron girders, brackets and machinery, cleaned up the crating material and other debris after motors and other equipment were delivered and unloaded.

The plaintiff was not a mechanic and, throughout the period involved, did not and was not suffered or permitted to render any services in connection with the repairs or maintenance work upon any elevators, either in or outside of the State of New York.

The hiring was at a wage of $25 per week during the whole period of plaintiff's employment and the hours of overtime changed as the maximum hours of labor changed as provided by law.

There is a conflict between the plaintiff's claimed hours of labor, and that shown by the evidence, which I will analyze later in this opinion, but it may well be noted here that the plaintiff's claimed number of hours that he worked for defendant is in my opinion so exaggerated as to greatly weaken the weight of his evidence on that subject.

In a seven-day week of twenty-four hours a day there is a total of 168 hours.

Deduct from that only the time off, as testified by plaintiff, from 8 o'clock A.M. Sunday, to 8:30 P.M. 14½ hours; from 12 o'clock noon Wednesday to 3:30 A.M. Thursday 15½ hours; and meal time of ½ hour each for breakfast and lunch and 1½ hours for supper, eliminating lunch and supper on Wednesday when he was off, and all three meals on Sunday when he was off, we have a total of time for meals of 13 hours, which with the 14½ off on Sunday, and the 15½ hours off on Wednesday-Thursday makes 43 hours and leaves from the total hours per week of 168 hours but 125 hours for working, sleeping and vari-

ous other things, whereas the plaintiff claims as his hours of labor 130 hours per week for each week employed by the defendant with the exception of four weeks in which he claims as his hours of labor 121 hours per week.

Whatever may be said as to plaintiff's services to the defendant after April 15th, 1939, the services rendered by the plaintiff between January 30th, 1939, and April 15th, 1939, cannot be brought under the "Fair Labor Standards Act of 1938", supra, as the plaintiff was clearly not engaged "in commerce or in the production of goods for commerce", 29 U.S.C.A. § 202; but was temporarily employed, not in the operation of defendant's plant, but to assist by cleaning a building, in which no part of defendant's plant was located, that was being remodeled and prepared for occupation by defendant, by carpenters and painters, who were not employees of the defendant in its plant, but engaged solely for and in remodeling and making such repairs to such building.

We will now consider the plaintiff's claim for services subsequent to his becoming a regular employee of the defendant at its plant #243, 44th Street, Brooklyn, New York, on April 15th, 1939, to which place it had been removed.

So much of Sections 6 and 7 of the "Fair Labor Standards Act of 1938" supra, Title 29, Secs. 206, 207, U.S.C.A., as is necessary for consideration at this time reads as follows:

"Sec. 6 [§ 206]. (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour."

"Sec. 7 [§ 207]. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date."

The "Fair Labor Standards Act of 1938" supra, was approved June 25th, 1938, and its effective date as to both of sections 6 and 7 of the Act was one hundred and twenty days from the date of its enactment, towit: October 24, 1938.

Plaintiff has cited many cases, as authority for his contention that defendant's activities were interstate in character, which arose under the "National Labor Relations Act" July 5, 1935, c. 372, §§ 1–16, 49 Stat. 449–457, Title 29, §§ 151–166, U.S.C.A., but it seems to me that they are generally distinguished from the case at bar, as the language deliberately used in the "Fair Labor Standards Act of 1938", supra, on which the action at bar is based, differs materially from that used in the "National Labor Relations Act" supra.

The "National Labor Relations Act" supra (Section 10(a), empowered the Labor Board "to prevent any person from engaging in any unfair labor practice (listed in section 8 [158]) affecting commerce."

This is a broad power of regulations.

The "Fair Labor Standards Act of 1938" supra, (Sections 6(a) and 7(a) limits the regulation to employees "engaged in commerce or in the production of goods for commerce."

This regulation is much narrower in scope.

That the difference in language used was deliberate, and not a mere matter of chance is pointed out by Judge Woolsey in his opinion in Philip B. Fleming, Administrator of Wage and Hour Division United States Department of Labor, Plaintiff v. Arsenal Building Corporation and Spear & Company, Inc., Defendants, D.C.S.D.N.Y., April 11, 1941, 38 F.Supp. 207.

The burden is thus placed upon the plaintiff in order to sustain his complaint to show by a fair preponderance of the evidence that he was while in the employ of the defendant "engaged in commerce or in the production of goods for commerce."

The terms Commerce and Produced are defined by the Act, Section 3, "Fair Labor Standards Act of 1938" supra, Title 29, Section 203, U.S.C.A., as follows:

"Sec. 3 [§ 203]. Definitions * * *

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof. * * *

"(j) 'Produced' means produced, manufactured, mined, handled, or in any manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

There is no evidence that plaintiff actually did any work as a skilled mechanic in the manufacture of the goods therefore it is necessary for the plaintiff to show that the defendant was engaged in interstate commerce, and that the plaintiff was engaged in any other manner, than those specifically mentioned in the definition of Produced, working on such goods, or in any process or occupation necessary to the production thereof.

Defendant cannot be held to have been engaged in interstate commerce because it purchased 21.5% or 30% of the materials used by it in its manufacturing from companies outside of the State of New York, as the "Fair Labor Standards Act of 1938" supra, does not so provide.

The materials so purchased by the defendant came to a permanent rest upon the delivery to the defendant when it became a part of the mass of the property of the defendant thereby losing its character as interstate commerce. A. L. A. Schechter Poultry Corp. et al. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, Comptroller of the Treasury, et al., 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Brown v. Bailey, Tenn.Sup., 147 S.W.2d 105. The last above cited case was based on the "Fair Labor Standards Act of 1938" supra.

The right of Congress, under the Constitution, in the regulation of commerce to exercise authority over all activity which has such a close and substantial effect upon interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstruction cannot be denied. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352.

That also appears to be the effect of the other cases cited by the plaintiff which are based on the "National Labor Relations Act" supra.

It is to be observed, however, that in the following of those cases the Courts expressly eliminated the out of the State purchases in arriving at their decision that a particular employer or defendant was engaged in commerce. National Labor Relations Board v. Henry Levaur, Inc., et al., 1 Cir., 115 F.2d 105; Consolidated Edison Co. et al. v. National Labor Relations Board et al., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

What is contended by the defendant in the case at bar, and I believe correctly, is not that Congress did not have the power to so act, but that it has not done so in the "Fair Labor Standards Act of 1938" supra, as in that Act it did not attempt to enter into a regulation of activities effecting commerce, but only granted rights to employees "engaged in commerce or in the production of goods for commerce." Fleming v. Arsenal Building Corp. et al., supra; Gerdert et al. v. Certified Poultry & Egg Co., Inc., et al., D.C.S.D.Fla., Miami Division, April 29, 1941, 38 F.Supp. 964, opinion of Judge Waller.

We are, therefore, brought to the consideration of whether the plaintiff was "engaged in commerce or in the production of goods for commerce"?

Defendant contends that it was not engaged in interstate commerce and, therefore, the plaintiff was not engaged in interstate commerce while in its employ.

This contention is based upon the fact that the service and repair work and material furnished in doing the same outside the State of New York was slight amounting to but $1,012 and representing only ⅕ if 1% of the entire business of all the departments combined and ⅜ of 1% of the total business done by the maintenance, service and repair department, and the further contention that the work so done without the State was casual and incidental.

The defendant manufactured and carried a stock of unallocated parts which it would if it received an order from outside the State of New York ship to purchasers whose credit was good and it did ship and furnish outside the State of New York articles manufactured in its factory in the State of New York which were used in repairs and replacements of elevators outside of the State of New York by its maintenance service and repair department on

elevators which defendant had formerly installed, and on some which it had not so installed.

While the volume is small as compared with its whole business it is substantial, and it was not casual or incidental but a part of its regular business.

The amount of the commerce carried on by the defendant outside of the State of New York was small but that does not seem to be the test. National Labor Relations Board v. Fainblatt et al., 306 U.S. 601, 59 S.Ct. 668, 671, 83 L.Ed. 1014.

In that case it is true that Mr. Justice Stone writing for the Court recognized that the "National Labor Relations Act" supra, did not exclude the operation of the legal maxim, "de minimis non curat lex", and I assume the operation of the same maxim would not be excluded in cases under the "Fair Labor Standards Act of 1938" supra, but I do not believe that under all the facts and circumstances it can be applied in the case at bar.

The following cases, cited on behalf of the defendant, are clearly distinguished on the facts from the case at bar: Goldberg v. Worman, D.C.S.D.Fla., Jacksonville Division, March 18, 1941, 37 F.Supp. 778, opinion of Judge Strum; H. W. Lamb v. Quality Bakery Co., Inc., Pa.Ct. of Appeals, Eastern Sec., decided August 10th, 1940; Whitson v. Wexler et al., Chancery Ct. of Tenn., decided January 10th, 1941; Rogers v. Glazer et al., D.C., 32 F.Supp. 990.

■ Defendant further contends that its service, maintenance and repair department is a service establishment as defined by Section 13(a) (2) of the "Fair Labor Standards Act of 1938" supra, Title 29, Section 213(a) (2), U.S.C.A., which reads as follows: "(a) * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

This contention is not sustained. The business carried on by the defendant was one business, the parts used in its servicing, maintenance and repairs were parts made for use in elevators whether under construction or being serviced, maintained or repaired. The factory of the defendant was the headquarters for those engaged in servicing, maintaining or repairing. They reported there every Friday for conference, supplies and to receive their pay. Each employee engaged in servicing, maintaining and repairing, obtained supplies and parts at the factory, and if additional supplies and parts were needed they notified the foreman by telephone, and he met them there in the evening and from the stock in the factory gave them what they required. The defendant did not run a retail establishment and its servicing was not a separate business, but only a part of the whole business. Interpretative Bulletin No. 6, Page 4, Paragraph 10, United States Department of Labor Wage and Hour Division Office of Administrator, December 1938, does not meet the situation in the case at bar.

■ Whether that subsection applies in the case at bar must be determined upon all of the facts shown in the record. Wood v. Central Sand & Gravel Co. et al., D.C., 33 F.Supp. 40.

■ On a consideration of all the facts in the case at bar it is established that the defendant was engaged in interstate commerce.

This brings us to a consideration on all the evidence of whether the plaintiff was engaged in interstate commerce while in the employ of the defendant between April 15th, 1939, and July 26th, 1940, when his employment terminated by his discharge, and if he was so employed did he work overtime, and if so, how much and what, if any sum, was due to him for such overtime?

The plaintiff was first employed temporarily on January 30th, 1939, at $25 per week, but as I have hereinbefore held, he was not engaged in interstate commerce during any part of the time between January 30th, 1939, and April 15th, 1939, no further consideration will be given to that.

On April 15th, 1939, he was regularly employed as a handy man, he was not a trained mechanic in the line of business carried on by defendant. Part of his work might be classified as that of a watchman, but the services rendered by him in the main would not be properly described by that title. Defendant contends that one who acts as watchman is not engaged in interstate commerce. Brown v. Bailey et al., Tenn.Sup., 147 S.W.2d 105. On the facts the case at bar is clearly distinguished from that case.

Killingbeck v. Garment Center Capitol, Inc., 259 App.Div. 691, 20 N.Y.S.2d 521, cited by defendant, and Wood v. Central Sand & Gravel Co. et al., supra, cited on behalf of the plaintiff, are more nearly in point, and are authority in support of plaintiff's contention that when the watchman is engaged in other duties in commerce for the defendant, who is engaged in interstate commerce, he comes under the Act.

The plaintiff has the burden of proof, by a fair preponderance of the evidence, that he was engaged "In commerce or in the production of goods for commerce", as this is one of the essentials of the cause of action. E. W. Lowrimoore, et al. v. Union Bag & Paper Corporation, D.C., 30 F.Supp. 647.

The weekly wage of $25 was paid to plaintiff and was greatly in excess of the minimum wage required by law during the first and second years.

■ The cleaning of the carpenter shop 3 or 4 times a day, and the daily cleaning of the machine shop, was work necessary to the carrying on of manufacturing, the painting of the iron parts and other parts in the plant, the cleaning of the electric motors that came in for repairs, the assisting in loading and unloading trucks at the plant, the supervision of water in the boiler, and cleaning the boiler, was work in interstate commerce by the plaintiff.

As I pointed out earlier in this opinion, the hours which the plaintiff claims to have labored (Ex. 1) are so exaggerated that I might be warranted in rejecting all of plaintiff's testimony with reference thereto, but I shall not do that, but will accept that which, under all the evidence and circumstances, I believe to be the fact, and reject that which I believe is erroneous.

The plaintiff kept no record of any kind of the hours he worked, but depended on his recollection; and he did not report any overtime to the defendant which, in the absence of such a report, would have found it difficult to ascertain it, as much of the time plaintiff claims to have been working overtime no representative of the defendant was present, and plaintiff was not a watchman making rounds and required to punch a clock.

Plaintiff says he commenced work at 3:30 A.M.; this I reject, as considered with his other evidence as to cleaning day by day during working hours in the plant, and in the afternoon after work had stopped, and all day Saturday there was no reason for him to start work at that time in the morning. He may have arisen at five-thirty or six o'clock and spent time in dressing for the day, and for other purposes of his own, but I can see no reason for his commencing work before six-thirty o'clock in the morning, as none of the men arrived until between 7:15 and 8 o'clock A.M.

On the days when plaintiff was working he worked until 6 o'clock P.M., and took at least one-half hour for breakfast; at least one-half hour for lunch, and after six P.M. at least one and one-half hours for dinner or supper, returning to the plant about 7:30 P.M., where he retired about 8:30 P.M., and did not regularly work during that hour, or such part of it, that he was at the plant. The men, who were engaged in servicing, at times came to the plant in the evening for extra parts, but when they did so they met their foreman at the plant, who gave them what they desired, and, as he said, tried not to disturb plaintiff.

There is nothing definite as to the times when any of the men came to the plant in the evening, nor whether it was before, or after the plaintiff retired, but as no deductions are made herein for legal holidays, or the time when plaintiff was sick and slept at home, in my opinion that was fully covered.

■ In determining the hourly rate of pay I will follow the method outlined in Interpretative Bulletin No. 4, Paragraph 6(3) (4) and Paragraphs 10 and 11, United States Department of Labor Wage and Hour Division, Office of the Administrator, November 1940, the rule therein given being that the weekly pay is divided by the number of hours worked during the week, as I believe that to be the intent of the law.

■ In computing the hours of overtime I will be guided by Interpretative Bulletin No. 13, Paragraphs 6 and 7, United States Department of Labor Wage and Hour Division, Office of Administrator, November 1940, from which it is clearly apparent that where the employee stays at the employer's place of business at night, as in the case at bar, and in the ordinary course of events has a normal night's sleep, and ample time for meals, and time for relaxation, and entirely private pur-

suits, such time must be excluded as this seems to me to be clearly the intent of the law.

| | | |
|---|---|---|
| A seven-day week of 24 hours each consists of | | 168 hours |
| Plaintiff took off from Sunday 6 A.M. to 8.30 P.M. | 14½ hours | |
| From Wednesday 12 noon to Thursday 6.30 A.M. | 18½ hours | |
| For sleeping, dressing, shaving and for such purposes as he desired at plant, 11 hours each for 5 days and 10 hours for one day. | 65 hours | |
| For meals, 2½ hours each for 5 days and ½ hour for breakfast one day. | 13 hours | 111 hours |
| Leaving hours he worked | | 57 hours |
| Hours of work at flat rate | | 44 hours |
| Overtime per week | | 13 hours |

When the law changed providing for a 42 hour week the computation is as follows:

| | |
|---|---|
| A seven-day week of 24 hours each consists of | 168 hours |
| Plaintiff took off or used for the purposes hereinbefore enumerated | 111 hours |
| Leaving hours he worked | 57 hours |
| Hours of work at flat rate | 42 hours |
| Overtime per week | 15 hours |

The amount due the plaintiff for overtime for the 44 and 42 hour weeks respectively is computed as follows:

From April 15th, 1939, to October 24th, 1939, weeks at 44 hours a week as follows:

| | |
|---|---|
| 44 hours at 44¢ per hour | $19.36 |
| 13 hours at 66¢ per hour | $ 8.58 |
| Total | $27.94 |
| Less Wages Paid | $25.00 |
| For Overtime per week | $ 2.94 |
| 27³⁄₇ weeks @ $2.94 per week Amount due | $ 80.64 |

From October 24th, 1939, to July 26th, 1940, weeks at 42 hours a week as follows:

| | |
|---|---|
| 42 hours at 44¢ per hour | $18.48 |
| 15 hours at 66¢ per hour | $ 9.90 |
| Total | $28.38 |
| Less Wages Paid | $25.00 |
| For Overtime per week | $ 3.38 |
| 39⁵⁄₇ weeks @ $3.38 per week Amount due | $133.26 |
| Total | $213.90 |

As provided by statute the plaintiff is entitled to recover for overtime two hundred and thirteen dollars and ninety cents, and as liquidated damages two hundred and thirteen dollars and ninety cents amounting in the aggregate to four hundred and twenty-seven dollars and eighty cents, with an attorney's fee of two hundred dollars and with costs, and judgment may be entered accordingly on the filing of findings of fact and conclusions of law.

Settle judgment on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion.