FLEMING, Administrator of Wage and Hour Division, v. LOWELL SUN CO.

No. 976.

District Court, D. Massachusetts.

Nov. 22, 1940.

Gerard D. Reilly, Solicitor of Labor, and Irving J. Levy, Asst. Solicitor, both of Washington, D. C., and John J. Cooney, Regional Atty., and Vernon C. Stoneman, Senior Atty., both of Boston, Mass., Wage and Hour Division U. S. Dept. of Labor, for plaintiff.

Elisha Hanson, of Washington, D. C., William R. Cook and Johnson, Clapp, Ives & Knight, all of Boston, Mass., and Frank Goldman, of Lowell, Mass., for defendant.

FORD, District Judge.

An application has been filed by Philip B. Fleming, Administrator of the Wage and Hour Division, United States Department of Labor, against the Lowell Sun Company, the respondent, praying that an order be issued directing the respondent to show cause why it should not be required to appear before the petitioner, or his authorized representative, and produce the books, records, documents, and papers, and give evidence as required by a subpoena duces tecum issued by Charles R. Hersum, Acting Regional Director of the Wage and Hour Division, under authority conferred on him by the Administrator, and duly served upon the respondent in connection with an investigation of the respondent, pursuant to Sections 9 and 11(a) of the Fair Labor Standards Act of 1938 (hereinafter called the Act) 29 U.S.C.A. § 201 et seq., of complaints of violation by the respondent of Sections 6, 7(a), 11(c), 15 (a) (1), 15(a) (2), and 15(a) (5) of the Act.

The investigation was instituted by the Administrator for the purpose of obtaining access to the wage and hour and shipping records of the respondent and he seeks to examine these records as a necessary incident to an investigation of the respondent now being conducted by his representatives. The subpoena directing the respondent to produce said records for inspection was issued by the Administrator's representative and the respondent refused to comply with the terms of the subpoena and it was for this reason that the Administrator commenced this summary proceeding.

The subpoena required the production at a time and place named therein, of books, records, shipping receipts, cancelled pay checks, and other documents showing the wages paid to and hours worked by employees of the respondent company for a certain definite period (except in a particular case which will be dealt with later).

The petitioner averred in his complaint that he had reasonable grounds to believe that the respondent company had violated and was violating the provisions of Sections 6, 7, 11(c) of the Act and certain regulations pursuant thereto.

The respondent filed an answer to the application of the Administrator setting out the grounds upon which it relies in asking this court to vacate the order to show cause and dismiss these proceedings.

The respondent at the outset raises three questions, (1) whether this court has jurisdiction in the premises; (2) whether the Administrator had jurisdiction to pursue this action; and (3) whether the subpoena was a nullity in that it was not issued by a person authorized by the statute to issue a subpoena.

Section 9 of the Act, for the purpose of any hearing or investigation provided for in the Act, makes applicable the provisions of Sections 9 and 10 (relating to the attendance of witnesses and the production of books, papers, and documents) of the

Federal Trade Commission Act of September 16, 1914, as amended, U.S.C.A. Title 15, Sections 49, 50, to the jurisdiction, powers, and duties of the Administrator.

Section 9 of the Federal Trade Commission Act provides: "Any of the district Courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of * * * · refusal to obey a subpœna * * * issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence * * *, or to give evidence touching the . matter· in question."

█ It is plain from the language of these provisions that this court has jurisdiction of the present proceeding and that the Administrator has jurisdiction to pursue it.

█ The respondent argues that the investigation herein was not based upon any complaint or charge of violation of law on its part and to be compelled to respond to the subpoena would violate its rights under the Fourth Amendment. This point was raised in the case of Fleming v. Montgomery Ward & Co., Inc., 7 Cir., 114 F.2d 384, certiorari denied October 28, 1940, 61 S.Ct. 71, 85 L.Ed. ——, and was found to be without merit. The court in that case stated, 114 F.2d at page 387: "It is apparent from this cursory analysis of pertinent provisions of the Act that Congress has conferred upon the Administrator * * * broad powers of regulation and supervision which are accompanied, for the purpose of giving effect thereto, by investigatory duties and powers which are designed especially to enable the Administrator to have available at all times detailed information respecting the conditions and practices of employment, including information respecting wages and hours of labor. * * * The Administrator is authorized to inspect in order 'to determine whether any person has violated the Act,' not merely to corroborate a previously formed belief of violation; and he is authorized to make inspections 'which may aid in the enforcement' of the Act."

And further, the court stated, 114 F.2d at page 390: "When Congress, acting in the public interest, has the power to regulate and supervise the conduct of any particular business under the commerce clause, an administrative agency may be authorized to inspect books and records and to require disclosure of information regardless of whether the business is a public utility and regardless of whether there is any pre-existing probable cause for believing that there has been a violation of the law. Neither of the foregoing elements enters into the question of the reasonableness of the investigation".

The court further said (114 F.2d at page 391), in discussing the decision in Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786: "The decision is limited to the proposition that the United States Government may demand only records and papers which are relevant to a lawful inquiry, or stated negatively, the Government may not demand unlimited access to all ·the corporation records, whether relevant or irrelevant to the subject of inquiry or investigation."

█ The relevancy of the records called for by the subpoena is clearly apparent in that the records asked for contained information as to the wages paid to employees and the hours worked by them; they are sufficiently and clearly described (Essgee Company of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917) and the scope of the subpoena is sufficiently limited in time, except as to those records called for in paragraphs 5 and 6 of the subpoena. The respondent should be compelled to produce only those called for by these paragraphs of the subpoena for a period of time beginning October 24, 1938, and ending on or about July 13, 1940. That is reasonable. Fleming v. Montgomery Ward & Co., Inc., supra.

It is also urged by the respondent that under Section 4 (b) of the Act, 29 U.S.C.A. § 204 (b), the Attorney General of the United States should have joined in or be in control of the present proceeding. This section provides in part that: "Attorneys appointed under this section may appear for and represent the Administrator in any litigation, but all such litigation shall be subject to the direction and control of the Attorney General." It does not appear that the language of this section compels a proceeding of this type to be conducted personally by the Attorney General. The Administrator attached to his petition herein a letter of the Attorney General to the then Administrator of the Wage and Hour Division, dated January 18, 1939, which dis-

closed an arrangement by which the Wage and Hour Division of the Department of Labor, and the Department of Justice, were to proceed to the enforcement of the Act. The Attorney General designated the legal staff of the Wage and Hour Division to handle legal work, including litigation in the courts of a civil character.

■ The legislative history of this section supports the conclusion that the Congress did not intend that these proceedings should be conducted personally by the Attorney General. The bill (S. 2475) providing for this legislation, as originally passed by the Senate, had no provisions comparable to Section 4 (b), but the Committee which reported this bill to the House (Rept. 1452, 75th Congress, 1st Session) added a provision that all litigation "shall be" conducted by the Attorney General. This language was thereafter changed, as is evidenced by the present language of Section 4 (b), and from this it is apparent that the Attorney General had his choice whether or not personally to conduct proceedings under the Act. The Attorney General in the arrangement described in the letter of January 18, 1939, did expressly point out that in the Circuit Court of Appeals and in a state court of last resort he "will take such part in the conduct of such cases as he deems to be in the interest of the United States." The arrangement further pointed out that United States Attorneys would presecute criminal cases with assistance from the Wage and Hour Division staff. The Attorney General retained control over any civil litigation carried to the Supreme Court of the United States.

■ There does not seem to be any merit in this point raised by the respondent. Cf. Securities & Exchange Commission v. Robert Collier & Co., Inc., et al., 2 Cir., 76 F.2d 939.

The respondent further argues that the fourth paragraph of Section 9 of the Federal Trade Commission Act limits the authority of the Administrator to bring these proceedings. This paragraph reads as follows: "Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this Act [subdivision of this chapter] or any order of the commission made in pursuance thereof."

■ Clearly, in view of the fact that the preceding paragraphs of this section expressly authorize the proceeding with which we are concerned, this paragraph must refer to something besides requiring the testimony of witnesses and production of documentary evidence. It can be construed as an added and alternative method of compelling obedience to a subpoena of the Administrator or it may have reference solely to "orders of the commission". Cf. Chamber of Commerce of Minneapolis et al. v. Federal Trade Commission et al., 8 Cir., 280 F. 45, 48, where it was held that the orders referred to in this clause were those involved in paragraph (b) of Section 6 of the Federal Trade Commission Act, 15 U.S.C.A. § 46 (b). It is not necessary to determine whether it makes provision for an alternative method or that it refers merely to orders described under Section 6 (b) because of the fact that it is plain that it in no way abolishes the authority to proceed as outlined in the preceding three paragraphs of Section 9.

■ The next point urged by the respondent is to the effect that the subpoena issued and served upon it was a nullity in that it was not issued by a person authorized by the statute to issue a subpoena. Section 9 of the Act makes applicable Sections 9 and 10 of the Federal Trade Commission Act to the jurisdiction, powers, and duties of the Administrator, and thus gives the Administrator the power to issue and serve a subpoena.

Section 4 (c) of the Act provides that the principal office of the Administrator shall be in the District of Columbia, but he, or his duly authorized representative may exercise any or all of his powers in any place.

On April 27, 1940, the Administrator authorized all Regional Directors and Acting Regional Directors, of the Wage and Hour Division, to execute and issue subpoenas for the attendance of witnesses and production of books and records. The subpoena here in question was signed by Acting Regional Director Charles R. Hersum.

■ I cannot agree with the contention of the respondent that Section 4 (c) of the Act confers no power upon the Administrator to delegate his power to issue a subpoena. The contention that this would result in authority being bestowed upon a large number of minor officials "with roving commissions" to issue subpoenas duces te-

cum which might cause oppression is not at all convincing. I can find no oppression in this case. The Congress in allowing such a delegation, without question, relied upon the fact that the authority to delegate powers by the Administrator would be exercised in no unreasonable manner. The delegation of powers by the Administrator cannot be considered unreasonable, inasmuch as only Regional Directors and territorial representatives of the Wage and Hour Division are authorized to execute and issue orders for investigation. The only redelegation of power permissible by the Regional Director is the manual task of signing a subpoena. All this seems reasonable. Congress evidently did not intend that the Administrator would perform all the duties that were required by the Act, and the language of Section 4 (c) gives ample authority to permit the Administrator to delegate to an Acting Regional Director authority to sign such a subpoena as we are concerned with here, in order to obviate delay and expense and to lighten, in part, the burden imposed upon the Administrator in the performance of his multiple duties under the Act. Further, it would appear, to allow responsible subordinates to perform the purely manual labor of signing subpoenas when the necessity of issuing one is based upon the judgment of a responsible official, is more or less incidental to an efficient enforcement of the Act. Speedy action in the issuance of subpoenas is sometimes required. It is inadvisable to repose such authority in one individual. Similar provisions delegating authority to issue subpoenas will be found in the Securities Act of 1933, 15 U.S.C.A. § 77s(b), (cf. In re Securities and Exchange Commission, 2 Cir., 84 F.2d 316; Newfield v. Ryan et al., 5 Cir., 91 F.2d 700, 702, 703); Federal Communications Commission, 47 U.S.C.A. § 409 (a); United States Maritime Commission, 46 U.S.C.A. § 1124 (a); Federal Tariff Commission, 19 U.S.C. A. § 1333 (a); Veterans' Administration, 38 U.S.C.A. § 131; cf. Motor Carrier Act, 1935, 49 U.S.C.A. § 305 (e); Packers & Stockyards Act, 7 U.S.C.A. § 222. See Fleming v. Arsenal Building Corp., D.C.S. D.N.Y., August 9, 1940.[1]

■ The contention of the respondent that the official seal of the United States Department of Labor is not present on the subpoena in question nullifies the subpoena, cannot be sustained. Assuming a seal of the Department would be desirable in that it would add further verification of the authority under which the subpoena was issued, yet there is no question that the subpoena issued here was authentic and that it was a subpoena issued by an officer designated by the Administrator of the Wage and Hour Division of the Department of Labor. It would seem, from a practical standpoint, that the proceedings herein should not end abruptly because of the lack of a seal of the Department on the subpoena. The contention of the respondent is merely a technical objection as to form. Cf. Wehrman v. Conklin et al., 155 U.S. 314, 330, 15 S.Ct. 129, 39 L.Ed. 167.

The respondent contends, in resisting the order sought, that the Administrator is without jurisdiction over the respondent's affairs because of the infinitesimal amount of respondent's circulation that crosses the state lines.

■ In support of this contention the respondent argues that more than 98% of its total average daily circulation is distributed entirely within the Commonwealth of Massachusetts. To be sure, the Congress in passing the Act was exercising its power to regulate commerce to correct and eliminate the conditions referred to in its findings set out in Section 2 (a) of the Act. However, the percentage or number of newspapers of the respondent that crossed state lines is not controlling on the question of whether or not the respondent is engaged in commerce between the states. It is common knowledge that the instrumentalities of interstate commerce are used and affected by every newspaper in gathering and publishing news and preparing the newspaper for circulation both in and out of the state in which it is published. This point has been raised time and time again, and it is too late in this case, under the doctrine laid down by the recent cases of Associated Press v. National Labor Relations Board, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953, and National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951, and cases cited, to raise it successfully now. Cf. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 671, 83 L. Ed. 1014, where the court said: "The power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small."

---

[1] No opinion for publication.

The next matter to be considered is the contention raised by the respondent that the application of the Act to its business constitutes a direct restraint upon that business and violates its rights as guaranteed by the First Amendment to the Constitution of the United States.

The court stated in Near v. Minnesota, 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357: "In determining the extent of the constitutional protection, it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication." The same case (283 U.S. at page 708, 51 S.Ct. 625, 75 L.Ed. 1357) declared that liberty of the press is not an absolute right. It is not immune from regulation of incidents of the newspaper business that do not restrict its freedom to publish. A newspaper is and should be subject to the general laws of the United States as any other industry conducted for profit. As the court said in the Associated Press case, supra, 301 U.S. at page 132, 57 S.Ct. at page 656, 81 L.Ed. 953: "The business of the Associated Press is not immune from regulation because it is an agency of the press. The publisher of a newspaper has no special immunity from the application of general laws. * * * The regulation here in question has no relation whatever to the impartial distribution of news." This language is applicable to the situation here. The provisions of the statute concerned in the present controversy have no more relation to the impartial distribution of news or freedom and liberty of the respondent to publish the news, as it desires it published, than the order of the National Labor Relations Board under consideration in the Associated Press case, supra. The respondent argues that newspapers are trustees of the rights of the people as guaranteed by the First Amendment and that public good requires that they shall not be subject to the control exercised by the provisions of the Act. This is true only in the event that the provisions of the act to which it is subject impose previous restraint on publication. Public good requires that the newspaper industry, as well as other industries in commerce or in the production of goods for commerce, be subject to the regulations of the Act, provided full freedom and liberty is given it to publish. To provide for the general well being of employees of newspapers engaged in interstate commerce is a provision for the public good and does not in any way tend to fetter a free press. It would be unfortunate if the employees of the press were deprived of the benefits of this general legislation that would do so much to improve their general welfare, upon any plea that the press is sacrosanct. The legislation involved here does not even remotely tend to control or restrain freedom and liberty to publish news. Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949, Grosjean v. American Press Co., 297 U.S. 233, 56 S. Ct. 444, 80 L.Ed. 660, and Near v. Minnesota, supra, indicate nothing to the contrary to what is said here.

The respondent's further contention that the application of Sections 6 and 7 of the Act to its business constitutes an unreasonable and arbitrary discrimination against it in violation of its rights under the Fifth Amendment, in that the Act does not apply to all citizens equally because of the exemption set out in Section 13 (a) (8) of the Act, is without merit under principles laid down in the case of Currin et al. v. Wallace et al., 306 U.S. 1, 13, 14, 59 S.Ct. 379, 386, 83 L.Ed. 441. The court in this case said: "We have repeatedly said that the power given to Congress to regulate interstate and foreign commerce is 'complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution'. Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L.Ed. 23. To hold that Congress in establishing its regulation is restricted to the making of uniform rules would be to impose a limitation which the Constituton does not prescribe. There is no requirement of uniformity in connection with the commerce power (Art. 1, sec. 8, cl. 3, Const. U.S.C.A.) such as there is with respect to the power to lay duties, imposts and excises (Art. 1, sec. 8, cl. 1, Const.U.S.C.A.). * * * Undoubtedly, the exercise of the commerce power is subject to the Fifth Amendment * * *; but that Amendment, unlike the Fourteenth, has no equal protection clause."

See Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 400, 401, 60 S.Ct. 907, 84 L.Ed. 1263; Redlands Foothill Groves et al. v. Jacobs et al., D.C., 30 F.Supp. 995, 1005.

I believe I have disposed of all the points properly before the court in this proceed-

328

ing. It is my conclusion that the respondent's motion to vacate the order to show cause and dismiss the proceeding herein should be denied; and, further, the respondent is ordered to produce before representatives of the Administrator the books and records called for by the subpoena duces tecum, with the time limitation concerning paragraphs 5 and 6 stated in the opinion, at a time and place to be designated by the court upon application to the court by the Administrator or his representative.