FLEMING, Administrator of Wage and Hour Division, United States Department of Labor, v. ARSENAL BLDG. CORPORATION et al.

District Court, S. D. New York.
April 11, 1941.

Gerard D. Reilly, Sol., and Irving J. Levy, Asst. Sol., Department of Labor, both of Washington, D. C. (Arthur E. Reyman, Acting Regional Atty., of Washington, D. C., and Irving Rozen, Senior Atty., and Helen E. Cottrell, both of New York City, of counsel), for plaintiff.

McLanahan, Merritt & Ingraham, of New York City (Walter Gordon Merritt, Henry Clifton, Jr., Martin J. Cough-lin, and Kenneth C. Newman, all of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

■ My decision in this cause is that the complaint should be dismissed, but, as the plaintiff is an agency of the United States, costs should not be allowed to the defendants.

I. My subject matter jurisdiction in this cause arises out of the fact that it is a suit in a civil nature brought by an officer of the United States authorized by law to sue, 28 U.S.C.A. § 41(1), and also because it is brought under the specific provisions of the Fair Labor Standards Act of 1938, Section 17, 29 U.S.C.A. § 217, by which I am given special jurisdiction to restrain violations of Section 15 of said Act, 29 U.S.C.A. § 215.

There is not any question of *venue* involved because suit is brought in the District wherein the defendants have their principal offices, and wherein only, suit for an injunction can be brought against them, and personal jurisdiction over them for the purposes of an injunction secured.

Furthermore, there is not any question whatever but that the defendants have been properly served by process, and have appeared, and that I have personal jurisdiction over them. I mention this for the following reason:

On a pre-trial hearing before Judge Knox, held February 28, 1941, the defendants raised the question of jurisdiction of the subject matter in this court and of their persons, and Judge Knox overruled their defense in so far as it challenged such jurisdiction. But no order was entered on his ruling. Consequently there is not any formalized rule of the case here.

The defendants, subsequently, at the pre-trial hearing, withdrew their claim that the act was unconstitutional, generally speaking, and claimed merely that the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., was not applicable to the defendants and their employees.

II. As is always the case, there are some preliminaries, of which disposal must be made, before we get down to the real gist of the case. These are as follows:

(1) During the argument I indicated that the third, or so-called partial defense, could not be invoked in an action for an

injunction, but could only be invoked, if at all, in a claim for monetary damages.

Consequently, that defense was overruled as a matter of law, and is no longer in the cause.

(2) On motion of the plaintiff, Paragraph 9 of the complaint, reading as follows:

"The goods produced and sold by said tenants, as aforesaid, compete with similar goods produced and sold in other states and said tenants in their said business compete with manufacturers of ladies' garments and with persons selling silks, rayon, supplies and printed material at wholesale, as aforesaid, located in other states,"

was stricken out. Therefore it is no longer contained in the record.

(3) During the argument, in order to be certain that the defendants would not have to rely solely on their general denials of the applicability of the act, and in order to prevent any lacuna in the pleadings, I suggested to counsel for the defendants that they should plead as a special defense that the defendants were "service establishments" within the meaning of the exception contained in Section 13(a) (2) of the Fair Labor Standards Act.

Accordingly, the defendants moved to amend their answer by adding a fourth defense as follows:

"That the defendant, Arsenal Building Corporation, and the defendant, Spear & Company, Inc., as its agent, are engaged in the operation of a service establishment within the meaning of Section 13(a) (2) of the Fair Labor Standards Act, and are, therefore, exempted from the application of the Act."

I granted this motion over what to me seemed an unaccountable objection by counsel for the plaintiff.

■ This amendment, which I regard as wholly within my discretion as trial judge under the circumstances of this cause, in my opinion, made the pleadings conform to the proofs.

III. I now turn to the merits of this cause.

The facts, briefly summarized, are as follows:

(1) The two defendants, Arsenal Building Corporation and Spear & Company, Inc., are corporations of New York State, having their principal places of business in the City, County and State of New York, and within this District.

The Arsenal Building Corporation is the owner of a twenty-two story basement and loft building located at the corner of Thirty-fifth Street and Seventh Avenue, in the City of New York. The building is known as 463 Seventh Avenue.

The defendant, Spear & Company, Inc., is the agent of the defendant, Arsenal Building Corporation, in the management and operation of the building above referred to, and has and exercises control and supervision of the building service employees employed in the said building.

With the exception of a retail clothing store, a barber shop and a cigar stand on the ground floor, the space in the loft building is leased, through Spear & Company, Inc., by the Arsenal Building Corporation, to approximately forty-two tenants, of whom forty are engaged in manufacturing various types of ladies garments for sale not only in New York, but in other States, and of whom two tenants are engaged in the sale, at wholesale, within and without the State of New York, of silks, artificial silks,—such as rayon—and print goods, to manufacturers, wholesalers and contractors in the ladies garment industries.

The sole business of the Arsenal Building Corporation is that of a real estate owner whose activities are limited to the leasing of space in its building to tenants, the maintenance of its building in good order and condition, and rendering to its tenants the ordinary type of service customary in the operation of a loft or office building.

(2) The defendant Arsenal Building Corporation employs and pays wages to twenty-six service and maintenance employees, including the superintendent of the building.

These employees are engaged, under various occupational classifications, in the performance of various duties about the building.

The duties of these maintenance and service employees are to supply the ordinary service above summarized, incident to the operation and maintenance of a loft or office building leased to tenants: namely, to service and maintain the building as a whole, but not to render service to individual tenants thereof, except as a landlord; to operate the elevators to carry passengers and the goods of the

tenants; only to enter the premises of the tenants in the case of emergencies which threaten to damage the building outside the leased premises by leaks, fire, or otherwise, and to repair the window cords and window weights when windows do not work, or to open windows which have become stuck after the painting of window frames.

The keys to the doors of the respective leased premises are solely in the custody of the tenants and none of the service employees has access to the keys or to the leased premises except on the occasion of the emergencies to which reference has been above made.

None of the employees of the Arsenal Building Corporation produces, manufactures, handles, processes, or in any other manner works or touches for the purpose of production, or works in any manner upon the goods produced by any of the tenants of the Arsenal Building Corporation, and none of such employees transports said goods in any proper sense, although some of them, as incidental to their building service, operate elevators which carry goods which are always in the custody of the representatives of the tenants, or their employees, or of employees of persons whom the tenants have engaged to transport the goods, or of the employees of carriers from whom they are receiving goods.

It may, therefore, be stated generally, on the unchallenged evidence, that the duties of the building service and maintenance employees of the Arsenal Building Corporation are limited to heating the building, keeping it in repair, protecting it from damage wherever damage is threatened, cleaning the public halls, stairways, toilets and other spaces occupied by the various common utilities of the building, and operating freight and passenger elevators for the tenants, their employees and the persons who carry the goods of tenants to and from the building.

(3) Generally speaking, the Arsenal Building Corporation and its employees, make no changes, alterations, repairs or renovations in the leased premises, except where the corporation agrees, at the time of signing or renewing the lease, to make certain specific changes or renovations of a definite limited character in order to make the leased premises conform to the requirements of the tenant as stated in the lease, or otherwise agreed upon with

the corporation. All substantial alterations, renovations or changes of such character are usually made not by the maintenance and service employees of the Arsenal Building Corporation, but by outside independent contractors hired for such purpose by the Arsenal Building Corporation.

It is not a part of the duty of any maintenance or service employee of the Arsenal Building Corporation to perform any work of any kind within the leased premises of the tenants, except where it may be necessary to enter the premises for the performance of work which, as above noted, relates to the preservation of the building in good condition so that it will operate satisfactorily; and except that occasionally some of the service and maintenance employees of the Arsenal Building Corporation, as above stated, do favors, usually on their own time, for the tenants and generally are given tips therefor, their activities are limited as indicated.

IV. This cause is especially concerned with Section 7 of the Fair Labor Standards Act, because it involves a question of hours of service and payment for overtime, and not a question of the rate of wages, which is dealt with in Section 6.

It is sufficient for the purpose of this cause at this point, therefore, to refer only to Section 7(a) of the Act, which reads as follows (italics mine):

"No employer shall * * * employ any of his employees *who is engaged in commerce or in the production of goods for commerce*—

" (1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

" (2) for a workweek longer than forty-two hours during the second year from such date, or

" (3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment, in excess of the hours above specified, at a rate not less than one and one-half times the regular rate at which he is employed."

There is not any complaint as to the rate of wages paid, which are in excess of those at present required by Section 6 of the Fair Labor Standards Act.

The complaint is that the defendant, Arsenal Building Corporation, through de-

fendant Spear & Company, Inc., as its agent, has employed its building service employees each week for a number of hours in excess of those set forth in Section 7 of the Fair Labor Standards Act, and that the defendant Arsenal Building Corporation fails and has failed, and threatens to continue to fail, to compensate each of its building service employees for hours of work in excess of those set forth in Section 7 of the Fair Labor Standards Act, at the rate of pay prescribed for such overtime employment.

It is provided by Section 13(a) of the Act, however, that (italics mine) "The provisions of sections 6 [206] and 7 [207] shall not apply with respect to * * * (2) *any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."* .

V. The question that is before me in this cause is, therefore, whether the Administrator of the Wage and Hour Division of the United States Department of Labor can, under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219, successfully maintain a cause of action for an injunction against the defendants who are not engaged in commerce and who have not any relation with production for commerce except that they lease space to tenants who are engaged in such production.

(1) Now, the word "commerce" is defined in Section 3(b) of the said Act as follows: " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

The word "produced" is defined in Section 3(j) of the said Act as follows: " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act [Chapter] an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The interesting words in Sections 6 and 7 of the Fair Labor Standards Act of 1938, so far as I am concerned, in this cause are the words *"production of goods for commerce."*

(2) What has to be done, of course, in a case of this kind which involves the ambit of a statute which has been held constitutional by the Supreme Court of the United States,—cf. United States v. Darby, 61 S.Ct. 451, 85 L.Ed. ——, decided February 3, 1941, and the Opp Cotton Mills, Inc., et al. v. Administrator of Wage and Hour Division of United States Department of Labor, 61 S.Ct. 524, 85 L.Ed. ——, decided on the same day—is to determine what concept was in the mind of the Congress when it adopted the statute.

Here we must determine what the words "production of goods for commerce", used in the Fair Labor Standards Act, connote.

(3) The Fair Labor Standards Act does not, however, as does the National Labor Relations Act, extend the limit of the federal jurisdiction to any act *"affecting* commerce". Cf. 29 U.S.C.A. §§ 152 (7), 159(c); and also National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, at pages 29–32, 57 S.Ct. 615, 81 Ed. 893, 108 A.L.R. 1352.

The limits of the federal jurisdiction under the Fair Labor Standards Act is extended only to employees "engaged in commerce or in the production of goods for commerce."
29 U.S.C.A. §§ 203, 206, 207.

Thus the connection of the employees who come under the Fair Labor Standards Act must be direct with commerce, as defined in that act. This involves an obviously narrower concept than the words *"affecting* commerce" used in the National Labor Relations Act which was cited as an analogy by the Government counsel during the argument of this cause.

Furthermore, the legislative history of the Fair Labor Standards Act shows clearly, I think, that as a result of the Conference between the Committees of the two Houses of Congress, the words *"production of goods for commerce"* were substituted for the words *"affecting commerce"* which had been contained in the successive drafts of the statute during its embryonic stages. Cf. 75th Congress, 1st Session, Report No. 884, of July 6, 1937, by Senator Black, of the Senate Committee on Education and Labor; 75th Congress, 1st Session, Report No. 1452, of August 6, 1937, by Mrs. Norton, of the House Committee on Labor; 75th Congress, 3rd Session, Report No. 2182 (at page 2), of April 21, 1938, by Mrs. Norton, of the House Committee on

212

Labor; 75th Congress, 3rd Session, Report No. 2738, of June 11, 1938, being the Conference Report made by Mrs. Norton, of the House Committee on Labor; see, also, The Coverage of the Fair Labor Standards Act and Other Problems in its Interpretation", to be found in "Law and Contemporary Problems—The Wage and Hour Law"—published by the School of Law of Duke University, in the summer of 1939, Volume 6, No. 3, pages 334–352, especially pages 338–339.

This indicates quite graphically that when the Fair Labor Standards Act of 1938 was passed the intent of Congress was that its ambit should be narrower than the ambit of the National Labor Relations Act, and, consequently, it seems perfectly clear to me, that the employees of the defendants are not to be considered as included within the Fair Labor Standards Act of 1938.

The acts of these employees might "affect commerce", but I find that they did not function in the "production of goods for commerce" even under the broad definition of "produce" given by the statute and quoted above.

■■ I find, therefore, that the employees of the defendants were not working in manufacturing establishments producing goods for commerce.

(4) It seems to me, however, although I am aware that a different view has been taken by Judge Kirkpatrick of the District Court, Eastern District of Pennsylvania, in the case of Fleming v. A. B. Kirschbaum Company, 38 F.Supp. 204, decided during the trial of this cause, that the real question in this cause is whether or not the facts show that the defendants are "service establishments" within the exception contained in Section 13(a) (2) of the Fair Labor Standards Act of 1938.

■ This cause was tried with the utmost thoroughness. Five days were occupied in the trial. It seemed to me, as the trial progressed, that the Government had, in its attempt to tie up the employees of the defendants with "production of goods for commerce", proved beyond any peradventure that the defendants, Arsenal Building Corporation and Spear & Company, Inc., as its agent, were "service establishments", all of whose servicing was in intrastate commerce, and I so find.

(5) Furthermore, the leases between the defendant Arsenal Building Corporation and its several tenants, which defined their legal relations to each other and which was their only connection with each other, in my opinion, constituted a definite and effective insulation of the employees of the Arsenal Building Corporation from being involved in the "production of goods for commerce", despite the fact that its tenants were so engaged. This is true, in my opinion, notwithstanding the broad definition contended for by the plaintiff as having been given under the Fair Labor Standards Act of 1938 to the word "produce".

(6) So far as the elevators were concerned, which perhaps was the most arguable point of the plaintiff's case, I think that, if considered as engaged in any commerce, they were engaged in a vertical intrastate commerce and could not have been considered to have been engaged in interstate commerce in any proper sense.

It is difficult, if not impossible, to imagine a more localized employment than the maintenance and operation of a loft or office building.

VI. I am filing herewith my formal findings of fact and conclusions of law.

An order dismissing the complaint without costs may be served on the plaintiff's attorneys with the usual notice.