**SCHROEPFER et al. v. A. S. ABELL CO., Inc.**

**No. 5097.**

Circuit Court of Appeals, Fourth Circuit.

Sept. 16, 1943.

Writ of Certiorari Denied Jan. 17, 1944.

See 64 S.Ct. 486.

112

I. Duke Avnet and William Taft Feldman, both of Baltimore, Md., for appellants.

William D. Macmillan, of Baltimore, Md. (Semmes, Bowen & Semmes, of Baltimore, Md., on the brief), for appellee.

Frederick U. Reel, Atty., U. S. Department of Labor, of Washington, D. C. (Douglas B. Maggs, Solicitor, and Bessie Margolin, Asst. Solicitor, both of Washington, D. C., Beverley R. Worrell, Regional Atty., of Richmond, Va., and Morton Liftin and Joseph I. Nachman, Attys., U. S. Department of Labor, both of Washington, D. C., on the brief), for Administrator of Wage and Hour Division, U. S. Department of Labor, amicus curiæ.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action instituted under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, to recover unpaid minimum wages, overtime compensation, etc. Plaintiffs are two rackmen and a rackman's helper engaged in distributing newspapers to racks and stores in the City of Baltimore. The defendant is the company engaged in publishing the Baltimore Sun. The judge below held that plaintiffs were not employees of defendant within the meaning of the act, but that two of them were independent contractors and the third was employed by the others as a helper. He held also that plaintiffs were not engaged in commerce or the production of goods for commerce within the meaning of the act. Schroepfer v. A. S. Abell Co., D.C., 48 F.Supp. 88.

The facts bearing on the issue as to whether or not the plaintiffs were employees of defendant are voluminous and complicated and are fully and fairly stated in the opinion below. Whether upon these facts plaintiffs were employees of defendant within the meaning of the act is a question not free from difficulty. (Cf. Southern R. Co. v. Black, 4 Cir., 127 F.2d 280), but it is one which it is not necessary for us to decide, since we are of opinion that, even if considered employees of defendant, plaintiffs were not engaged in commerce within the meaning of the act. They had nothing to do with collecting news, assembling it, printing the paper, or any other activity in which interstate commerce was involved. Their only duties related to the retail sale of papers, or delivery thereof for retail sale, in the City of Baltimore. The pertinent facts with

reference to this aspect of the case are thus stated by the court below:

"2. Two of the plaintiffs, Fred and Charles R. Schroepfer, brothers but suing separately and individually for deficiency in compensation, were during the period involved in this suit, October 24, 1938, to January 19, 1942, occupied as distributors of the defendant's newspapers, to street corner vending machines and to stores wholly located in portions of Baltimore City or the immediately adjacent county. The third plaintiff, Abraham Berry, was principally employed as a helper by the Schroepfers, part of the time by one and at other times by the other, and was paid by them respectively. On Saturday nights Berry was also directly employed by the defendant for about eight hours and for that work was paid by the defendant.

"3. The Schroepfers were known in the business as rack-men. Their relations with the defendant were not defined in writing and had existed for several years prior to October 24, 1938, when the Fair Labor Standards Act became effective. Each had a separate territory for the distribution and sale of newspapers. Their activities consisted in the delivery of the several successive editions of the daily newspapers to the street-corner vending machines, and of the Sunday papers to some stores in their respective territories. The vending machines were in the general form of metal racks placed on various street corners, holding a number of copies of papers, with a receptacle under lock and key for the deposit of coins to be made by the purchasers of the papers. The rack-men, of whom there were about fourteen for Baltimore City, collected the money daily from the vending machines. They were entitled to retain or be credited with the whole of the money so collected. Their accounting with the defendant was as follows: They were charged at wholesale rates, about 1¢ per paper less than the price paid by the purchaser, for the number of papers that they received from the plant of the defendant in Baltimore City, and also about $3.00 per week for so-called rack rental; and they were credited with the amount of currency collected from the vending machines and turned in to the defendant's office; and with the wholesale price of papers returned as not resold to the public; and were also credited with $25.00 per week for an allowance on account of the expenses of ownership and operation of their own automobiles used in distributing the papers, with a further allowance of $3.00 weekly for delivery of Sunday papers to various stores, since they received no personal profit from the sale of Sunday papers. * * *"

There is no question but that the defendant is engaged in interstate commerce with respect to the publication of its papers, the gathering of news therefor and the sale of the portion of its papers sent out of the state. N. L. R. B. v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 954. That, however, is not the question before us, since the application of the act depends not upon the nature of the employer's activities, but upon the character of the employee's work. Kirschbaum v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. ——. It is manifest that employees engaged in the local distribution of papers after they have been printed are not engaged in the production of goods, either for commerce or for any other purpose; and the question in the case is whether they are engaged in commerce which is interstate in character. We think that the question answers itself, if one's mind is allowed to deal with a common sense question in a common sense way.

The question is not whether interstate commerce is affected by the activities of plaintiffs, but whether plaintiffs themselves are engaged in such commerce. McLeod v. Threlkeld, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538. As said in the case cited: "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, 'production of goods for commerce.'" One who merely delivers papers after they have been printed within the city to news racks or dealers for local sale is certainly not "actually engaged in" interstate commerce, nor is he "so closely related to the movement of the commerce as to be a part of it". As was well said by the learned judge below [48 F.Supp. 96]: "There could hardly be a more purely intrastate activity than the sale of news-

papers in a particular small part of a large city, especially where the newspaper is locally produced in the same city. If such an activity is interstate commerce, then seemingly the newsboy who buys and sells these papers on the street corner, and the drug store which buys and sells them to its customers, are likewise engaged in interstate commerce."

It is argued that what plaintiffs do is merely a part of the interstate gathering and distribution of news in which defendant is engaged; that the process which begins with the collection of news, admittedly an interstate activity, is not ended until the paper is placed in the hands of the customer or reader; and that plaintiffs' work is an integral part of the process. The fallacy of the argument consists in assuming that defendant is engaged in the sale of news. As a matter of fact it is engaged here in the sale of papers. It is news, of course, that makes the papers valuable; but it is the papers, not the news, that it is selling. If the sale of papers be regarded as the sale of news, it is news processed in the course of publication into an entirely new article of commerce. When papers are sold across state lines, interstate commerce is involved in such sale. When the news printed or the material used in the paper is transported across state lines interstate commerce is necessarily "affected" by anything that affects the publication and sale of papers. By no possible construction, however, can sale or transportation of papers within the state of their publication be said to be in itself interstate commerce. The publisher of a newspaper is a manufacturer of the printed papers. News reports, paper stock, ink and everything else that goes into the making of the papers are raw materials that he uses in their manufacture; and these raw materials lose their identity and the interstate character which may have attended them when given this new form. A sausage manufacturer who sells his product intrastate would hardly be said to be engaged in interstate commerce with respect to such intrastate sales merely because he purchases the materials that go into the sausages in interstate commerce. Yet this would be just as sensible as to say that local sales of a newspaper are in interstate commerce because news is acquired for publication in the paper through an interstate service.

Very much in point is Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. ——. In that case the employer was a produce dealer who received goods in interstate commerce. The employee was a night shipper whose work consisted in putting up orders and loading trucks for delivery to retail dealers within the state or driving a truck distributing merchandise to the local trade. The act was held not to apply and the case was distinguished from the companion case of Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 337, 87 L.Ed. ——, in which the employment held within the act consisted in dealing with goods moving in interstate commerce and in which stoppage of the goods in a warehouse was but a temporary incident of the interstate movement intended from the beginning to terminate only upon delivery to the customers who had ordered the goods. In the Jacksonville Paper case the court had said, " * * * we cannot conclude that all phases of a wholesale business selling intrastate are covered by the Act solely because it makes its purchases interstate". In Higgins v. Carr Bros. the court said [317 U.S. 572, 63 S.Ct. 338, 87 L.Ed. ——]: "Petitioner in his brief describes the business in somewhat greater detail and seeks to show an actual or practical continuity of movement of merchandise from without the state to respondent's regular customers within the state. But here, unlike Walling v. Jacksonville Paper Co., there is nothing in the record before us to support those statements nor to impeach the accuracy of the conclusion of the Supreme Judicial Court of Maine that when the merchandise coming from without the state was unloaded at respondent's place of business its 'interstate movement had ended.'"

■ In the case at bar, there can be no question but that the interstate movement of materials used in the publication of the papers, including news reports and other matter published, ended when they were delivered to defendant. Defendant used them as it saw fit in producing its papers and did not pass them on to its customers, as a telegraph company or a news service might have done. What occurred, therefore, was not mere "milling in transit" but the production of an entirely new article of commerce in which the news received interstate was merely one of the ingredients.

■ Much in point, also, is the decision in Walling v. Goldblatt Bros., 7 Cir.; 128 F.2d 778, 782, certiorari denied 318 U.S.

757, 63 S.Ct. 528, 87 L.Ed. ——. That case involved employees of a department store, some of whom were engaged in handling interstate shipments of goods before they came to rest in the warehouse of the employer or in preparing goods for shipment into other states, and others of whom were engaged in assembling and delivering goods from warehouses to stores within the same state. The former were held to be covered by the act and the latter not to be. The court in an able and exhaustive opinion drew the distinctions between interstate and intrastate commerce, and in holding the latter class of employees not subject to the act, said: "Where orders are solicited within a state and the goods are shipped from without the state directly to the customer or to an agent for delivery to the customer the transactions are a part of interstate commerce until the goods reach the customer. Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202, 206, and cases there cited; Binderup v. Pathe Exchange, Inc., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534. But here there were no such prior orders. Defendant knew in advance from its records, in a general way, the needs of the retail stores and acted accordingly. But defendant was not relying on existing orders from its stores or customers. The goods arrived at the warehouses and came to rest. They were not destined for any specific customer or store. The mere fact that an anticipated local transaction causes movement in interstate commerce is not sufficient to constitute the wholly local transaction after arrival a part of commerce. Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202, 207, and cases there cited; Lipson v. Socony-Vacuum Corp., 1 Cir., 87 F.2d 265, 267. Where goods are delivered to the buyer to be sold later and delivered to intrastate buyers subsequent acts are not commerce. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 174; Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Gerdert v. Certified Poultry & Egg Co., D.C., 38 F.Supp. 964; Veazey Drug Co. v. Fleming, D.C., 42 F.Supp. 689; Klotz v. Ippolito, D.C., 40 F.Supp. 422; Foster v. National Biscuit Co. [D.C.], 31 F.Supp. 552; Lipson v. Socony-Vacuum, 1 Cir., 87 F.2d 265; Atlantic Coastline R. [Co.] v. Standard Oil, 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270; Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206; Fleming v. Arsenal Bldg. Corp., D.C., 38 F.Supp. 207; Rauhoff v. Henry Gramling & Co., D.C., 42 F.Supp. 754."

In Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 174, the employees delivered from the local warehouses of the employer to local dealers beer which had been brought into the state in interstate commerce. In holding that the employees were not subject to the act, the court said: "Certain it is that these employees were not producing goods for interstate commerce, and decision must turn upon whether or not they were engaged in interstate commerce within the meaning of the act. We are of opinion that the work of Redfern and Wadsworth in delivering beer for the Jax Beer Company in pursuance of its local beer distributing business was intrastate in character and that they were not 'engaged in commerce' within the meaning of the Fair Labor Standards Act. Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Klotz v. Ippolito, D.C., 40 F.Supp. 422; Foster v. National Biscuit Co., D.C., 31 F.Supp. 552; Fleming v. Arsenal Bldg. Co., D.C., 38 F.Supp. 207." See also Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176; Jewell Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Walling v. Mutual Wholesale Food Co., D.C., 46 F.Supp. 939; Walling v. Sanders, D.C., 48 F.Supp. 9.

There is nothing in the decision of the court in Burton v. Zimmerman, 4 Cir., 131 F.2d 377 which is in any wise to the contrary. That case dealt with laborers in an office building, and was decided in the lower court, prior to the Supreme Court's decision in Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, upon principles not in harmony with the latter decision. Upon an admission in the brief of counsel that none of the tenants of the building were engaged in the production of goods for commerce, the case was remanded for a further finding of facts. Fleming v. Lowell Sun Co., D.C., 36 F.Supp. 320, is authority on the question here involved for no more than that the publisher of a large newspaper is engaged in interstate commerce, a proposition which defendant admits. Walling v. Sun Pub. Co., D.C., 47 F.Supp. 180, dealt with newspaper employees doing an entirely different sort of work from that involved here. Western Union Tel. Co. v. Foster, 247 U.S. 105, 38 S.Ct. 438, 62 L.Ed. 1006, 1 A.L.R. 1278, held merely that the inter-

116

state character of stock reports sent by telegraph did not end until the reports were received in the offices of the brokers where it was originally intended that the movement should finally end. This is, of course, a proposition well settled in the law relating to interstate commerce. It has no application here for the reason that the destination of the news reports used by defendant was the newspaper office.

■■ It appears that the plaintiff Berry did some work for defendant on Saturday nights in addition to the work performed as a helper to the Schroepfers. The court below pointed out, however, that, as to this work, he received compensation in excess of the minimum rate prescribed by the act and did not work more than the maximum hours. As to the work done for the Schroepfers, he was employed by them to do this and not by defendant; and the only argument advanced for considering him an employee of defendant with respect thereto, is that the provisions of the act so require. Since we have held, however, that this work was not covered by the act, we may not resort to the act to determine the question of employment. It is not necessary, then, that we consider what the rights of Berry would be if it appeared that he had been in the service of defendant for more than the maximum number of hours per week, only part of which was service covered by the act. This point, furthermore, is not presented by the briefs of plaintiffs; and it is well settled that a point not presented by the briefs is abandoned.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.