COURTNEY M. MABEE et al., Respondents, *v.* WHITE PLAINS PUBLISHING COMPANY, INC., Appellant.

Second Department, December 29, 1943.

*Elisha Hanson* and *Frances K. Marlatt* for appellant.

*Stephen R. J. Roach* for respondents.

*Douglas B. Maggs, Solicitor (Irving J. Levy* and *Bessie Margolin, Assistant Solicitors, John K. Carroll, Regional Attorney,* and *Joseph I. Nachman,* attorney, of counsel), for Administrator of Wage and Hour Division, United States Department of Labor, as *amicus curiae.*

JOHNSTON, J. This action was instituted under subdivision (b) of section 16 of the Fair Labor Standards Act of 1938 (ch. 676, 52 U. S. Stat. 1060; U. S. Code, tit. 29, § 201 *et seq.*), to recover unpaid overtime compensation, an additional equal amount as liquidated damages, and an attorney's fee. From a judgment in favor of plaintiffs defendant appeals. The Act applies to all employees engaged in commerce or in the production of goods for commerce and, so far as pertinent, provides:

" Sec. 3. As used in this Act — * * *

" (b) ' Commerce ' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof. * * *

" (i) ' Goods ' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

" (j) ' Produced ' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The principal question presented is: Does the Act apply to appellant, and were its employees — respondents herein — engaged "in any process or occupation necessary to the production" of goods in interstate commerce within the meaning of subdivision (j) of section 3 of the Act?

Appellant is a domestic corporation and at the times mentioned in the complaint published a newspaper known as "The Daily Reporter" at White Plains, N. Y. Respondents were employees of appellant during the period in controversy or portions thereof, namely, from October 24, 1938, when the Act became effective, until February 28, 1941, when publication of the newspaper was suspended. O'Donovan was city editor and at times acted as editor; Mabee was assistant editor and subsequently sports editor. The other respondents were reporters.

Appellant contends that the application of the Act to the newspaper publishing business constitutes an abridgement of freedom of speech and the press, in violation of the First Amendment to the Constitution of the United States. Appellant also contends that the application of the Act to its business constitutes an unreasonable, arbitrary and injurious discrimination against it, in violation of its rights under the due process clause of the Fifth Amendment, in that the Act does not apply to all citizens equally because it exempts certain newspapers. More particularly, the Act provides that it shall not apply with respect to "any employee employed in connection with the publication of any weekly or semiweekly newspaper with a circulation of less than three thousand the major part of which circulation is within the county where printed and published; * * *." (§ 13, subd. [a], cl. [8].) The court held there was no merit to either contention. While the United States Supreme Court has sustained the constitutionality of the Act (*United States* v. *Darby*, 312 U. S. 100, and *Opp Cotton Mills* v. *Administrator*, 312 U. S. 126), it has not considered the precise questions now posed. Nor is it necessary for us to pass upon these questions because this judgment must be reversed for the reason that appellant and respondents were not engaged in commerce within the meaning of the Act, and Congress never intended it to apply to the situation disclosed by this record.

It is uncontradicted that the circulation of appellant's newspaper during the period involved in this suit varied between 9,500 and 11,000; that its purpose was to serve the people of White Plains and the neighboring communities — but not

throughout Westchester County — and that its subscribers resided in those areas. It also clearly appears that appellant had no desire and made no effort to secure " out-of-State " circulation, although during the summer its newspaper was mailed to subscribers who were temporarily out of the State on vacation or absent from the State while at school or in the armed forces. It is undisputed that at no time were there more than forty-five copies sent out of the State.

The conclusion is irresistible that appellant was engaged in a strictly local as distinguished from a national activity, i.e., the local business of publishing a local newspaper. It did not produce goods for commerce within the meaning of the Act and, consequently, plaintiffs were not engaged in any process or occupation necessary to the production thereof.

We are urged to hold that because Congress has not expressly excluded commerce of small volume from the operation of the statute, it applies to all newspapers except those which specifically come within the exemption heretofore set out. But it still remains for the courts — " Examining the Act in the light of its purpose and of the circumstances in which it must be applied " — to say whether Congress intended to exclude local newspapers having an insignificant out-of-State circulation. (*Labor Board* v. *Fainblatt,* 306 U. S. 601, 607.)

We recognize that the United States Supreme Court has held that " the power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small." (*Labor Board* v. *Fainblatt, supra.*) Nor are we unmindful that the United States Supreme Court has stated that under the Fair Labor Standards Act Congress " has made no distinction as to the volume or amount of shipments in the commerce or of production for commerce by any particular shipper or producer." (*United States* v. *Darby, supra.*) But no case is cited — and independent search has disclosed none — where the United States Supreme Court has held that the Act applies where only an insignificant and inconsequential part of an employer's product is transported from one State to another. The United States Supreme Court, however, has recently stated that " Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the States." (*Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, 570.)

Respondents rely on *Schmidt* v. *Peoples Telephone Union of Maryville, Mo.* (138 F. 2d 13). There the Circuit Court of Appeals (Eighth Circuit) held that employees, whose duty it

was to handle interstate communications, were entitled to recover under the Act even though only one sixth of the company's income was derived from interstate calls. But the "Act's coverage depends on the special facts pertaining to the particular business." (*Walling* v. *Jacksonville Paper Co., supra,* p. 572.) Therefore the *Schmidt* case (*supra*), if pertinent, is not helpful and may also be readily distinguished. There the defendant, a voluntary association maintaining a telephone service primarily for its members, offered a continuous service to and from six towns in an adjoining State. It admittedly was directly engaged in interstate commerce, which the court emphasized was part of the company's regular business and not "some inconsequential incident" of interstate commerce. There the defendant held itself out as furnishing interstate communication service both to its subscribers and the general public and solicited it. Here the sale of its newspaper outside the State was not a regular part of appellant's business but only an inconsequential incident resulting from appellant's desire to serve the convenience of a few of its subscribers sojourning out of the State.

Respondents also rely on *National Labor Relations Board* v. *Boswell Co.* (136 F. 2d 585) where the Circuit Court of Appeals (Ninth Circuit) held that the defendant Corcoran Telephone Exchange was an instrumentality of interstate commerce within the meaning of the National Labor Relations Act (U. S. Code, tit. 29, § 151 *et seq.*) notwithstanding that only seventy-seven of 35,000 toll calls a year went to points outside the State. That case also may be distinguished. There the facilities of a local telephone exchange were an integral part of a vast network of telephone lines which covered the entire nation, and while those lines were owned by a large number of small telephone companies, such as the Exchange, they were operated as a unified system. In addition "The Exchange's facilities and lines [were] admittedly available and used for the transmission of interstate messages, both those originating and terminating within the Exchange's system." Hence, the court held the Act applicable even though the interstate business involved but a small part of the entire service rendered by the Exchange.

The Solicitor for the Administrator of the Wage and Hour Division, *amicus curiae,* cites *Muldowney* v. *Seaberg Elevator Co.* (39 F. Supp. 275 [E. D. N. Y.]) and quotes from the opinion in *McKeown* v. *Southern California Freight Forwarders* (52 F. Supp. 331) where, under circumstances unrelated to

those in the instant case, the Act was held to apply even though the defendant's interstate business was only a small percentage of its total business. Neither case is relevant because admittedly in each the significant fact was that the interstate business was not casual but regular and an integral part of the every day and every week business, whereas, as heretofore pointed out, appellant's interstate business was not regular but casual; not an integral but only an incidental part of its essentially local business.

The mailing of less than one half of one per cent of its total circulation to subscribers temporarily out of the State did not change appellant's business from an intrastate to an interstate enterprise. Nor is it reasonable to conclude that by so doing appellant should have an interstate character given to the remaining more than ninety-nine and one-half per cent of its business. (*Zehring* v. *Brown Materials,* 48 F. Supp. 740 [S. D. Cal.]; *Goldberg* v. *Worman,* 37 F. Supp. 778 [D. C. Fla.].) In so holding we merely apply the maxim *de minimis non curat lex,* which the United States Supreme Court recently indicated was the right, if not the duty, of the courts. (*Labor Board* v. *Fainblatt,* 306 U. S. 601, *supra.*) To hold otherwise would attribute to the Congress a purpose which it neither contemplated nor designed.

It is also contended that the Act is applicable to appellant because: (a) it purchased newsprint paper and ink outside New York; (b) it secured certain news features from sources outside New York; (c) it obtained the reports of the Associated Press; and (d) it received some advertising from agencies which placed advertising with newspapers throughout the country. The identical argument, under similar facts, was rejected by the Circuit Court of Appeals (Fourth Circuit) in *Schroepfer* v. *Abell Co.* (138 F. 2d 111, 114).

It is inconceivable, at least to us, that because appellant purchased, outside New York, materials used in the production of its newspaper, it is subject to the Act. Obviously, when these supplies were delivered to appellant's plant they arrived at their destination and their interstate movement ended. Nor do we believe that when appellant obtained news reports and other matter from sources outside New York and edited and reproduced some of them in its newspaper, it became subject to the Act. As stated by Judge PARKER in the case last cited: "In the case at bar there can be no question but that the interstate movement of materials used in the publication of the papers, including news reports and other matter pub-

lished, ended when they were delivered to defendant. Defendant used them as it saw fit in producing its papers and did not pass them on to its customers, as a telegraph company or a news service might have done. What occurred, therefore, was not mere ' milling in transit ' but the production of an entirely new article of commerce in which the news received interstate was merely one of the ingredients." The transmission of extra State news by appellant to its readers did not involve that " practical continuity of movement " of which the court spoke in *Walling* v. *Jacksonville Paper Co.* (317 U. S. 564, *supra*). If respondents' reasoning be adopted, then as stated by Mr. Justice McREYNOLDS in his dissenting opinion in the *Fainblatt* case (*supra*), " the power to regulate interstate commerce brings within the ambit of federal control most if not all activities of the Nation; * * *." For instance, a baker in Brooklyn, who purchases his flour from a concern in Minnesota and whose sales are limited to his local neighborhood, would be engaged in interstate commerce and subject to the Act if, at a customer's request, each week he sent a box of cookies to the latter's son at the training station in Pensacola, Florida. Of course, no such result was intended by Congress.

Nor is the holding in the *Schroepfer* case (*supra*) in conflict with *Associated Press* v. *Labor Board* (301 U. S. 103), upon which the court below in part relied. The Associated Press is not a newspaper but, as Mr. Justice ROBERTS pointed out, " an instrumentality set up by constituent members [there are 1,350 of them throughout the United States] who are engaged in a commercial business for profit, and as such instrumentality acts as an exchange or clearing house of news as between the respective members, and as 'a supplier to members, of news gathered through its own domestic and foreign activities." The operations of the Associated Press, unlike appellant's activities, involve " the constant use of channels of interstate and foreign communication." There is nothing in the *Associated Press* case (*supra*) which is decisive of or even touches the question presented in the case we are now reviewing.

Respondents also rely on *Fleming* v. *Lowell Sun Co.* (36 F. Supp. 320, reversed on other grounds, 120 F. 2d 213, and affd. by an equally divided court, 315 U. S. 784). That case, so far as material, is authority only for the proposition that a large newspaper is engaged in interstate commerce. (See *Schroepfer* v. *Abell Co., supra,* p. 115.)

In view of our determination that appellant was not engaged in interstate commerce and that respondents were not engaged

in any process or occupation necessary to the production of goods in interstate commerce within the meaning of the Act, it is unnecessary to discuss the other questions raised. We observe, however, that the award made to each respondent is excessive insofar as it computes overtime compensation on a regular work week of forty hours rather than forty-four hours during the first year's operation of the Act, and on a regular work week of forty hours rather than forty-two hours during the second year's operation of the Act.

The judgment should be reversed on the law and the facts, with costs, and the complaint dismissed on the law, with costs.

HAGARTY, Acting P. J., ADEL, TAYLOR and LEWIS, JJ., concur.

Judgment reversed on the law and the facts, with costs, and the complaint dismissed on the law, with costs.