## McLEOD v. THRELKELD et al.
### Civil Action No. 705.

District Court, S. D. Texas, Houston Division.

July 10, 1942.

Leon C. Levy, of Houston, Tex., for plaintiff.

Baker, Botts, Andrews & Wharton (by John P. Bullington), of Houston, Tex., for defendants.

KENNERLY, District Judge.

This is a suit by plaintiff, an employee, against defendants, his employers for wages, overtime compensation, damages, attorney's fees, etc., under the Fair Labor Standards Act of 1938, Sections 201 to 219, Title 29 U.S.C.A., and this is a partial hearing under Rule 42(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, of the case on the merits. Plaintiff affirms and defendants deny that the facts bring them within the scope of Sections 6 and 7 of the Act. Defendants say, however, that if they do, they are exempt under Section 13 of the Act. This, plaintiff denies.

(a) The main facts have been stipulated as follows:

"It is agreed and stipulated between the parties to the above entitled and numbered cause, acting herein by and through their respective attorneys thereunto duly authorized, as follows:

"Threlkeld Commissary Company (hereinafter called 'defendant') is a partnership composed of M. C. Threlkeld, J. H. Threlkeld, and M. C. Threlkeld, Jr. Each of these individuals is a citizen and resident of the State of California. It is engaged in the business of providing meals for certain employees of railway companies commonly known as maintenance of way employees who perform work upon the right of way, lines, and tracks of railway companies. Defendant, by a contractual arrangement with Texas and New Orleans

Railroad Company (hereinafter called 'railroad company'), furnishes boarding service which is available to the railroad company's maintenance of way employees. The board paid by such employees varies in accordance with the type of gang with which they are working, the employees in the B. & B. gangs paying the highest board and the employees in track entra gangs paying the lowest board. Most of the maintenance of way employees of the railroad company board with the defendant but some do not. In addition to furnishing meals to such employees the defendant also furnishes bedding to the employees boarding with it. Employees boarding with the defendant sign wage deduction orders authorizing the railroad company to deduct from the wages of such employees the amount of board due by said employees and to pay the same over to defendant. Employees boarding with the defendant are not given credit for single meals missed (except when away on company business) but in all cases are given credit when three or more consecutive meals are missed after notice to the defendant.

"Meals served to the railroad employees above mentioned are prepared and served in a cook and dining car running on the railroad's rails and attached to a particular gang or outfit. Employees of the railroad other than those in the gang or outfit to which a particular cook and dining car is attached on occasions are served therein and such employees pay at a fixed price per meal. Each cook and dining car is in charge of a cook employed by the defendant whose duty it is to cook and serve meals in the dining car and to keep the kitchen and dining car clean and suitable for the serving of meals. He is also required to keep an account of the meals served. In case of emergency work done by the maintenance of way employees the cook is required to prepare and serve meals during such emergency and to follow the crew to the point of such emergency work. Plaintiff L. McLeod was employed by defendant as a cook during the period from July, 1939, to May, 1941, and performed the duties of a cook as hereinbefore stated. He worked exclusively at points on the lines of the railroad company within the state of Texas. The foreman employed by the railroad company in charge of each gang to which a dining and cooking car is attached acts on behalf of defendant to check the supplies and receipts of each car and for these services he receives free board or in lieu thereof a monthly cash consideration.

"Texas and New Orleans Railroad Company is a common carrier engaged in the interstate transportation of both goods and persons. Employees of the railroad in the gangs for which defendant furnishes board are engaged in the work of constructing and maintaining the right of way and railroad lines of the railroad company in proper condition for the interstate transportation of persons and property by said railroad company. The practice of railroad companies with respect to the furnishing of meals for maintenance of way employees varies—some railroads, as the Texas and New Orleans Railroad Company, make arrangements by contract for the furnishing of such meals or board by a commissary company, some railroads operate cook and dining cars for themselves for the benefit of such employees, some railroads furnish cook and dining cars to the employees who prepare and serve their own meals therein, and some railroads leave such employees entirely to their own devices for the procuring of their meals.

"Defendant, in addition to its operations in Texas on the lines of the Texas and New Orleans Railroad Company, has similar operations, under contracts with other railroads, in the states of Arizona, California, Colorado, Louisiana, Nevada, New Mexico, Oregon, and Utah.

"The parties agree that if the court determines that plaintiff is covered by the Fair Labor Standards Act of 1938 they will make a bona fide effort to stipulate the amount of damages, if any, due to plaintiff."

(b) A part of the evidence was heard before Honorable James V. Allred before his resignation. I quote from his memorandum of May 9, 1942:

"There was one matter which I regarded as immaterial, upon which I heard some evidence and made a finding from the bench. It was reported, as I recall.

"The question upon which I heard evidence was whether the defendants' commissary served others than railroad workmen and, if so, to what degree. I found from the evidence that if they ever furnished meals to anybody else it was only upon two or three isolated occasions and so small as to be infinitesimal."

1. The pertinent portion of Section 7 of the Act, Section 207, Title 29 U.S.C.A., is as follows:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Commerce is defined by the Act, Paragraph (b) of Section 203, Title 29 U.S.C.A., as follows: " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

Goods are defined by the Act, Paragraph (i) of Section 203, Title 29 U.S.C.A., as follows: " 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

Production or produced is defined by the Act, Paragraph (j) of Section 203, Title 29 U.S.C.A., as follows: " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

Doubtless the Texas and New Orleans Railroad Company and its employees to whom defendants furnished meals and bedding were, during the period in question and under the facts stipulated, engaged in Interstate Commerce, but not in the production of goods for commerce within the meaning of the Act.

Plaintiff points to the decision of the Supreme Court in Kirschbaum v. Walling (Arsenal Building Corporation v. Walling) 62 S.Ct. 1116, 1117, 86 L.Ed. ——, decided June 1, 1942, and other similar cases, and insists that since the Railroad Company and its employees were engaged in Interstate Commerce, defendants and plaintiff, under the facts stipulated, were engaged in commerce within the meaning of the Act.

Plaintiff overlooks the fact that the language of the Act with respect to the production of goods for commerce is much broader than the language of the Act with respect to engaging in commerce. The decisions recognize this. Then too the facts here are wholly different from the facts in the referred to case of Kirschbaum et al. v. Walling, et al. There, substantially all the tenants in the buildings in question were engaged in the production of goods for commerce, and it was held that certain of the employees of the owner and operator of the buildings were engaged in a "process or occupation necessary to the production" of such goods. Here, no goods were produced, and plaintiff and defendants can be held to be under the Act, if at all, only because the Railroad Company and its employees engaged, not in the production of goods for commerce, but in commerce. In the recent case of Overstreet v. North Shore Corporation, 5 Cir., 128 F.2d 450, decided May 28, 1942, the Court, in speaking of the Act, uses this language: "In view of the legislative history of the Act and the precise language in which it is drafted, the courts have considered it plain that Congress did not intend for the phrase, 'engaged in commerce', to be expanded by construction to embrace employees engaged in the performance of duties merely affecting, burdening, or obstructing interstate commerce; and decisions under other and broader legislation enacted by Congress pursuant to the power to regulate commerce have no application here. Our inquiry, therefore, is whether these employees, tested by the character of the services they performed, actually were engaged in interstate commerce."

In Jax Beer Co. v. Redfern, 5 Cir., 124 F. 2d 172, 174, Redfern and another were employed by Jax Beer Company, a Texas cor-

poration, to make local deliveries in and around Dallas, Texas, by truck, of beer shipped to the Beer Company in Interstate Commerce. There, the Court said (italics mine): *"Certain it is that these employees were not producing goods for interstate commerce, and decision must turn upon whether or not they were engaged in interstate commerce within the meaning of the act.* We are of opinion that the work of Redfern and Wadsworth in delivering beer for the Jax Beer Company in pursuance of its local beer distributing business was intrastate in character and that they were not 'engaged in commerce' within the meaning of the Fair Labor Standards Act. Jewell Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Klotz v. Ippolito, D.C., 40 F.Supp. 422; Foster v. National Biscuit Co., D.C., 31 F.Supp. 552; Fleming v. Arsenal Bldg. Co., D.C., 38 F.Supp. 207."

I do not think that either plaintiff or defendants were engaged in commerce within the meaning of the Act. Judgment for defendants.